State Bank of Eureka, Plaintiff-Appellee, v. Lynn L. Banta, Inc., an Illinois Corporation, Defendant-Appellant.

## Gen. No. 11,796.

Second District, First Division.
December 5, 1963.
Rehearing denied December 30, 1963.

Galbraith & Baymiller, of Peoria, for appellant.

Samuel G. Harrod, of Eureka, for appellee.

McNEAL, P. J.

The plaintiff, State Bank of Eureka, sued the defendant, Lynn L. Banta, Inc., to recover the value of crops allegedly mortgaged to plaintiff and thereafter sold to the defendant by the mortgagor. The Circuit Court of Woodford County allowed plaintiff's motion

for summary judgment and entered judgment against defendant for $3088.16. Defendant appealed.

The chattel mortgage attached to plaintiff's amended complaint shows that on February 16, 1961 Eldon L. Pelz owed the State Bank of Eureka $9200; and that to secure payment of that sum Pelz mortgaged to the Bank livestock, farm machinery, and other chattel property including: "3500 bushels of corn now on my farm" and "his undivided interest in and to any and all crops of every kind . . . which have been sown, grown, planted, cultivated or will be harvested during the year 1961 on the following described real estate, situated and being in the County of Marshall and State of Illinois, to wit: 253 acres that I have rented from William Barth and is located about 1 mile north of Washburn, Illinois . . . ." The mortgage was properly acknowledged on February 16, and recorded in the Recorder's office in Marshall County on February 23, 1961.

Lynn L. Banta, Inc. operated a grain, feed and elevator business at Low Point in Woodford County. By its answer Banta admitted the following purchases from Pelz, viz.:

| | | |
|---|---|---|
| June 19, 1961—270 bushels of wheat for | $ | 526.89 |
| June 26, 1961—605 bushels of corn for | | 593.77 |
| Oct. 16, 1961—430 bushels of beans for | | 967.50 |
| Nov. 20, 1961—203 bushels of corn for | | 94.50 |
| Jan. 4, 1962—1574 bushels of corn for | | 1463.50 |

It was alleged that on January 23, 1962 Banta delivered to plaintiff its check for $558 payable to the bank and Pelz, and that the total grain delivered to Banta by Pelz resulted in a credit to his account amounting to $3088.16. Defendant also alleged that the description of the land in the chattel mortgage was so vague and indefinite as not to put anyone on notice of plain-

tiff's rights; and that the mortgage and notes secured thereby became due on December 16, 1961, that this suit was commenced on April 25, 1962, more than 90 days after maturity of the notes and mortgage, that plaintiff's lien expired March 16, 1962, that by virtue of section 4, c 95, Ill Rev Stats, plaintiff's mortgage ceased to be valid as against defendant, and that defendant was an existing creditor and bona fide purchaser before plaintiff commenced suit.

In its motion for summary judgment the bank accepted as a true statement of account Banta's admission that Pelz had been credited with $3,088.16 for grain delivered. Plaintiff's motion was supported by three affidavits. The cashier of the bank verified that the balance due from Pelz on January 23, 1963 amounted to $5829.18. Pelz stated under oath that the corn delivered to Banta on June 26, 1961 was part of the 3500 bushels of corn mentioned in the mortgage; that he operated only one farm in 1957 through 1961; that all crops sold by him during that time and in January, 1962 were raised on that farm; that the farm was the 253 acres described in the mortgage, managed by William Barth, and that Barth owned 50 acres, Gladys Barth 132 acres, and the Etta West Estate 71 acres. Barth was the administrator of the West Estate. His affidavit corroborated Pelz' statements with reference to the ownership of the land and Pelz' tenancy of the farm and no other for the five years preceding March 1, 1962. Barth also stated that in the fall of 1961 he notified Banta that he claimed a landlord's lien on grain delivered by Pelz.

Defendant filed a motion that plaintiff's motion for summary judgment be denied, or in the alternative that defendant have judgment on the pleading. Banta's motion was supported by its president's affidavit that the purchases of grain from Pelz were made with-

327

out knowledge of any claim of lien, and that neither he nor any of his employees knew where the grain delivered by Pelz had been grown or stored.

On this record the trial judge allowed the bank's motion for summary judgment and entered final judgment against Banta for $3088.16 on February 11, 1963. Defendant's theory on appeal is that the mortgage did not adequately describe the real estate where the crops were stored and to be grown, and that the mortgage ceased to be a lien before, and was invalid as to defendant at, the time plaintiff sued.

The rules applicable in determining the sufficiency of a description of property covered by a chattel mortgage are not so rigid as those applicable in determining the sufficiency of a description contained in a conveyance of real estate. 8 ILP 119, Chattel Mortgages § 42. It has been held that the description in a chattel mortgage should be sufficiently specific to afford third persons the means of identifying the chattels, and that generally a description is sufficient which contains enough information to enable third persons, aided by inquiries which the instrument itself suggests, to identify the property. Southern Surety Co. v. Peoples Bank, 332 Ill 362, 369, 163 NE 659; Melody v. Arcola State Bank, 249 Ill App 85, 88.

The property mortgaged was described as 3500 bushels of corn on the Pelz farm and all crops grown and harvested during 1961 on 253 acres that Pelz rented from Barth and located about 1 mile north of Washburn. This was the only farm operated by Pelz from 1957 through 1961, and it was rented from Barth as agent and manager for the owners. According to Pelz' affidavit, all crops sold by him during the period of his tenancy and in January, 1962 were raised on that farm, and the corn delivered to Banta on June 26, 1961 was a part of the 3500 bushels mentioned in the mortgage. Aided by inquiries which the mortgage

328

itself suggested, we are of the opinion that the description in the mortgage was sufficient and that Banta had constructive notice of the bank's mortgage.

■ In support of the contention that the bank lost its lien by failure to commence its action until April 25, 1962, counsel for Banta cites Bower v. Popp, 241 Ill App 568. In that case Bower's mortgage on Popp's auto matured on March 17, 1924. On April 15 Popp employed Wuhs to repair the car. Popp failed to pay for the repairs and Wuhs retained possession of the car until August 13, when Bower brought a replevin suit. It should be noted that Bower sued for possession of the car as against Wuhs' claim for a lien based upon his retention of the car more than 90 days after maturity of the debt due Bower; and that Wuhs' attorney admitted that if Bower's mortgage was valid on the date the automobile was replevied, then Wuhs' lien for repairs was inferior to that of the mortgage. In the instant case the bank's suit is in the nature of an action of trover for the value of crops sold and delivered to Banta before maturity of Pelz' debt and within 90 days thereafter.

It has been repeatedly held that a person purchasing chattels under a mortgage duly acknowledged and recorded, before the mortgage matures, takes subject to the mortgage and acquires the rights only of the mortgagor. Such a purchase does not depend upon the same rule that governs where the purchase is made of the mortgagor in possession after condition broken. Arnold v. Stock, 81 Ill 407, 409. It has been often held by the Supreme Court that as between the mortgagee of chattel property and bona fide purchasers after maturity, the mortgagee must take possession within a reasonable time after default. The rule, however, has no application between the mortgagee and mortgagor, or a purchaser from the latter before maturity. Sondheimer v. Graeser, 172 Ill 293, 297, 50

NE 174. Where a purchaser buys before the maturity date of a recorded mortgage, he is charged with notice of the mortgagee's rights and is not entitled to possession of the chattel as against the mortgagee, even though the latter fails to institute proceedings within the 90-day period after maturity as specified by statute. United States v. Christensen, 50 Fed Supp 30. Thus it is clear that Banta's purchases in June, October and November, 1961, were all subject to the bank's lien, even though its suit was commenced more than 90 days after maturity.

Early in January the bank's officers notified defendant's president of the existence of the chattel mortgage. Whether this notice was given before or after Pelz' delivery of corn on January 4, 1962, does not appear from appellant's abstract. In any event Banta made no payment for corn in January until the 23rd and then made the check payable to both Pelz and the bank, and thereby recognized the bank's interest in the corn delivered on January 4. Further, we agree with appellant's conclusion that "In applying the 1955 statute to the facts in this case, we find that plaintiff's mortgage was valid from the date it was recorded until 90 days after maturity." Since the bank's mortgage was valid until 90 days after maturity, it follows that Banta's purchase of 1574 bushels of corn from Pelz on January 4, 1962, was subject to the bank's mortgage. It is our opinion that a cause of action then accrued to the bank to sue Banta for the value of grain purchased in derogation of its rights under its valid mortgage, and that such cause of action was not limited by the 90-day provision of the statute.

We conclude that the motions presented by the parties raised no material and genuine disputed question of fact, and that the trial court properly allowed plain-

tiff's motion for judgment. Accordingly the judgment of the Circuit Court of Woodford County is affirmed.

Affirmed.

DOVE and SMITH, JJ., concur.