42161. CHARLES S. MARTIN DISTRIBUTING COMPANY, INC. v. FIRST STATE BANK OF BLAKELY et al.

42162. GENERAL ELECTRIC CREDIT CORPORATION v. FIRST STATE BANK OF BLAKELY et al.

ARGUED JULY 5, 1966—DECIDED NOVEMBER 29, 1966.

*Charles L. Henry,* for Chas. S. Martin.

*James Stanfield, Stone & Stone, W. L. Stone,* for General Electric.

*James W. Bonner, Perry, Walters, Langstaff & Lippitt, S. B. Lippitt, Jr.,* for First State Bank.

PANNELL, Judge. Under the Act of 1962, approved February 27, 1962 (Ga. L. 1962, p. 156 et seq.) the State of Georgia adopted its version of the Uniform Commercial Code effective April 1, 1963 *(Code Ann.* § 109A-10—101). The Act approved March 22, 1963 (Ga. L. 1963, p. 188 et seq.) changed the effective date to January 1, 1964. The above section also provides that the Act "applies to *transactions entered into* and *events occurring* on and after that" date. (Emphasis supplied). Section 109A-10—102 provides: *"Transactions validly entered into* before the effective date specified in Section 109A-10—101 and the rights, duties, and interests flowing from them remain valid thereafter and may be terminated, completed, consummated, or *enforced* as required or permitted, by any statute or other law amended or repealed by this Act as though such repeal or amendment had not occurred." (Emphasis supplied.)

It may be well to note that the old statutes as to transactions entered into before the effective date, are effective "as though such repeal or amendment had not occurred," rather than as though the Act (Uniform Commercial Code) had not been enacted. In so far as the present case is concerned this leaves the old statutes apparently controlling the prior transactions and the new statute apparently controlling the transactions under the Code, both the old and the new standing together. The conflict, if any, must therefore be resolved.

The specific repealer section *(Code Ann.* § 109A-10—103), immediately following, in part provides that "[t]he provisions

of the following Chapters of the Georgia Code of 1933 as amended shall yield to and be superseded by any provision or provisions of this Act which conflicts therewith: Chapter 67-1. Mortgages in General. General Principles. Chapter 67-11. Mortgages and Bills of Sale Covering Crops. In General. Chapter 67-13. Conveyances to Secure Debt. Chapter 67-14. Conditional Sales." By the Act of 1963, supra, the above quoted portion of *Code Ann.* § 109A-10—103 was enacted into a separate section (§ 109A-10—103.2) entitled "Certain Code Sections Superseded in Part." The provision here, when considered in connection with § 109A-10—102, obviously supersedes the chapters referred to only where a transaction entered into subsequently to the effective date of the Code is involved.

The first question to be determined then is the effect of these two sections on the bill of sale to secure debt of the First State Bank, and brushing aside for the moment ancillary questions, the answer depends upon whether or not the purchase of replacement inventory by the debtor and the *attaching* thereto of the security interest of the bank (see *Code* § 67-103, as amended) is a new transaction entered into between the bank and the debtor so as to require a "filing" under the Code to perfect the security interest therein as against subsequent security interests for which there is a filing under the Code. Appellant relies strongly on statements contained in Coogan's Secured Transactions under the Uniform Commercial Code, Vol. 1, pp. 377, 378, which is as follows (with portions in brackets not quoted in the brief): "In one-shot transactions like those traditionally covered by a pledge, conditional sales agreement or a chattel mortgage which does not provide for covering future property or future debt, the language of the section quoted above is clear; the old law continues to govern. [If, within the time the old law filing is good, the pre-Code security interest is to be discharged voluntarily by the debtor's performance or involuntarily through realization on the collateral, the old law governs throughout. A harder problem arises when the old law filing ceases to be effective—e.g., the old law required re-filing at the end of three years, two and a half of which have already run when the Code becomes

effective. In many cases, as a practical matter, refiling under the old law has become impossible. Here one must impute some intelligence to the legislature by saying that as to refiling the new mechanics have been substituted for the old and a filing in the place designated by the Code continues the perfection of the old security interest. Some states have attempted to spell out this idea, with notable lack of success in at least one case.]

"But not all pre-Code security transactions are of the 'one-shot' conditional sale or simple chattel-mortgage type. Some pre-Code agreements provide for security interests to attach in the future when either new property or new debt is placed under the security arrangement. Here 9-102 comes into play—there will then be a 'transaction' which occurs after the effective date of the Code, and as to *this* transaction and any future transactions, the Code applies. [One can argue that since the Code does not say that each of the steps in 9-203, 9-204, and 9-303 must take place after the Code has gone into effect, a new Code security interest will arise automatically when new debt is created or new collateral is added.] In any event, once a 'transaction' occurs, a filing under the Code will be necessary [(except where excused) and prudence calls for some kind of writing in which in effect the parties acknowledge that they are now operating under the new rules.]" We have no problem involving the lapse of the time for re-filing under the old law. Under the old law, in order to preserve the security interest as against third parties, a re-filing by affidavit was required once every seven years. See Ga. L. 1937, pp. 760, 761; Ga. L. 1945, p. 389; Ga. L. 1943, pp. 575, 576 (*Code Ann.* §§ 67-2504, 67-2505, 67-2506, 67-2507). We do not agree with the contention that the acquisition of new and additional inventory by the debtor after the effective date of the Commercial Code was a transaction entered into between the bank and the debtor so as to require a re-filing by the bank after the effective date of the Code in order to protect the bank as to subsequent security interest entered into and filed under the Code.

*Code* § 67-103 as amended provides in part: "A mortgage

or bill of sale to secure debt may embrace all property in possession, or to which the mortgagor or grantor has the right of possession at the time, or may cover a stock of goods, an inventory of merchandise (which latter term shall include materials, goods in process, and finished goods intended for sale, whether or not requiring further manufacturing or processing), or other things in bulk, but changing in specifics, in which case the lien of the mortgage or the title given to secure debt is lost as to all articles disposed of by the mortgagor or grantor up to the time of foreclosure, but attaches to the purchases made to supply their place, and, when expressly so stipulated therein, to other after-acquired additions to the original stock of goods, inventory of merchandise, or the other things in bulk originally mortgaged or conveyed to secure debt." Under this Code section the instruments therein referred to create a lien or security title as to after-acquired property which attaches to the after-acquired property under substantially the same conditions as the Commercial Code now provides. See Section 109A-9—204. This attachment of the lien or the security title to the new goods results by operation of law. (*Powers & Co. v. Georgia-Florida Grocery Co.*, 7 Ga. App. 592 (2) (67 SE 685)) and was an incident of a mortgage or bill of sale to secure debt on an inventory even in the absence of express words in the instrument. (Id.) See also *Code* § 67-1301. The bank's bill of sale to secure debt when filed for record was notice to the world of the bank's claim of security title on the after-acquired inventory and superior to subsequent instruments thereon to secure debt except possibly instruments evidencing a proper purchase money interest. See *Furst Bros. v. Commercial Bank*, 117 Ga. 472 (2) (43 SE 728).

The purpose of a filing under the Code is the giving of notice of the security interest claimed by the person filing. If the notice given by a pre-Code filing be sufficient to constitute notice the purpose of filing is effected, and the fact that the Commercial Code has come into existence in the meantime would not automatically cancel the notice given by the pre-Code filing. When the pre-Code notice by filing ceases to be effective under the pre-Code statute, then this question might properly arise as to re-filing under the Code.

While the security interest of the bank was not perfected under the Code by a filing under the Code, it was nonetheless perfected and valid under prior law and did not become unperfected until the pre-Code filing expired; in which event it could again be perfected, or the perfection continued, by a filing under the Code.

So we hold that the bank's bill of sale to secure debt on the inventory is entitled to priority over the security interests of the other parties (although not expressly excepted from filing under *Code Ann.* § 109A-9—302) unless their security interests have priority because of perfection as purchase money security interests on the inventory sold.

Pretermitting the question of whether their failure to notify the bank (see *Code Ann.* § 109A-9—312) because of the bank not having filed under the procedure of the Commercial Code, may or may not have prevented the priority of the alleged purchase money security interest, it appears from the stipulation of fact that none of the inventory levied upon and sold was purchased from these parties or that they advanced sums for the purchase thereof. Under these circumstances the agreements held by them do not meet the requirements of the Code relating to purchase money security interest. See *Code Ann.* § 109A-9—107. While their instruments create a security interest on the proceeds from the sale in the usual course of business of the items constituting the inventory, it does not appear that there are any such proceeds or that the inventory levied upon was purchased from such proceeds. See *Code Ann.* § 109A-9—306. The trial court did not err in ordering the funds disbursed to the bank.

*Judgment affirmed. Felton, C. J., and Frankum, J., concur.*

The case began in the court below as a money rule brought by First State Bank of Blakely against C. C. Swann as Sheriff of Early County, in which the appellant, General Electric Credit Corporation, and appellant, Charles S. Martin Distributing Company, Inc., were parties. The case was tried upon a stipulation of facts as follows: "On December 5, 1962, D. D. Knighton, who was doing business in Blakely, Georgia, under the trade name of Early Furniture Company, executed a note and

bill of sale to secure debt in favor of the First State Bank of Blakely. A copy of the note and bill of sale to secure debt is attached hereto marked Exhibit A and made a part of this agreed statement of facts. The bill of sale to secure debt was duly filed for record in the office of the Clerk of the Superior Court of Early County, Georgia, on December 18, 1962, and recorded December 20, 1962, in Mortgage Book 101, Page 392, in said clerk's office. The bill of sale to secure debt secured a principal indebtedness between the grantor and grantee therein of $12,500.00, as well as each and every renewal of the debt and all other indebtedness, present or future, owing or becoming due to the First State Bank of Blakely by D. D. Knighton. The bill of sale to secure debt conveyed to the First State Bank of Blakely as security for the aforesaid debts all of the stock of merchandise of Early Furniture Company and all of the stock of merchandise of Early Furniture Company which from time to time replenished or replaced the original stock conveyed as security.

"On December 16, 1963, D. D. Knighton, d/b/a Early Furniture Company executed a security agreement in favor of General Electric Credit Corporation. This security agreement was signed by General Electric Credit Corporation on January 10, 1964. A copy of the security agreement marked Exhibit B is attached hereto and made a part of this stipulation of facts. The security agreement (Exhibit B) granted to General Electric Credit Corporation a security interest in all of the inventory of Early Furniture Company and in all future inventory as well as a security interest in the proceeds thereof. The security agreement was given to secure all present and future indebtedness between D. D. Knighton and General Electric Credit Corporation. On January 2, 1964, at nine o'clock a.m., General Electric Credit Corporation filed a financing statement in connection with the security agreement (Exhibit B). The financing statement was filed in the office of the Clerk of the Superior Court of Early County, Georgia, a copy thereof, marked Exhibit E, is hereto attached.

"On January 1, 1964, D. D. Knighton, d/b/a Early Furniture Company, executed a security agreement in favor of

Charles S. Martin Distributing Company, Inc. A copy of the security agreement marked Exhibit C is attached hereto and made a part of this stipulation of facts. The security agreement (Exhibit C) granted Charles S. Martin Distributing Company, Inc., a security interest in all of the inventory of Early Furniture Company and in all future inventory, as well as a security interest in the proceeds thereof. The security agreement was given to secure the payment of the purchase price of all future sales made by Charles S. Martin Distributing Company, Inc., to D. D. Knighton, d/b/a Early Furniture Company. On January 1, 1964, Charles S. Martin Distributing Company, Inc., filed a financing statement in the Office of the Clerk of the Superior Court of Early County, Georgia, with reference to the security agreement (Exhibit C).

"Neither General Electric Credit Corporation nor Charles S. Martin Distributing Company, Inc., ever gave the First State Bank of Blakely notice that either of them expected to acquire a purchase money security interest in the inventory of D. D. Knighton, d/b/a Early Furniture Company, nor did General Electric Credit Corporation give such notice to Charles S. Martin Distributing Company.

"On April 23, 1965, General Electric Credit Corporation filed in the Superior Court of Early County, Georgia, its affidavit to foreclose its said security agreement (Exhibit B). Execution issued thereon on April 23, 1965, and was duly levied on all of the inventory of Early Furniture Company by C. C. Swann as Sheriff of Early County, Georgia. All of the inventory levied upon consisted of goods which had changed in specifics subsequent to January 2, 1964; however, at the time of the levy the inventory of Early Furniture Company contained no merchandise which was purchased from or financed by General Electric Credit Corporation or Charles S. Martin Distributing Company, Inc.

"Prior to May 15, 1965, the first State Bank of Blakely foreclosed its aforesaid security agreement (Exhibit A) and placed said bill of sale to secure debt and the execution issued thereon in the hands of Sheriff C. C. Swann. Prior to the foreclosure sale, hereinafter referred to, the First State Bank of Blakely

amended its affidavit of foreclosure and placed the amended affidavit and the amended execution issued thereon in the hands of Sheriff C. C. Swann, together with its written demand upon the sheriff for all of the proceeds of said foreclosure sale. It is stipulated that the First State Bank of Blakely has never had actual physical possession of any of the property sold at the sheriff's sale nor has it ever filed a financing statement in connection with its bill of sale to secure debt.

"On May 15, 1965, Sheriff C. C. Swann, as Sheriff of Early County, Georgia, duly sold at foreclosure sale all of the inventory of Early Furniture Company. The gross proceeds from the sale was $20,500.00. The court costs, expenses and taxes incident to the sale came to $1,577.72, leaving a present balance in the sheriff's custody of $18,922.28.

"On June 12, 1965, Charles S. Martin Distributing Company, Inc., foreclosed its security agreement (Exhibit C) and placed the foreclosed security agreement and execution issued thereon in the hands of Sheriff C. C. Swann.

"The foreclosed bill of sale to secure debt held by the First State Bank of Blakely (Exhibit A) secures a total debt owing by D. D. Knighton to the bank in the amount of $46,617.70.

"The foreclosed security agreement held by General Electric Credit Corporation (Exhibit B) secures a total debt owing by D. D. Knighton to General Electric Credit Corporation of $30,861.40.

"The foreclosed security agreement held by Charles S. Martin Distributing Company, Inc., (Exhibit C) secures a total debt owing by D. D. Knighton to Charles S. Martin Distributing Company, Inc., of $1,382.04.

"Upon the refusal of Sheriff C. C. Swann to deliver the net proceeds of the aforesaid foreclosure sale to the First State Bank of Blakely, the bank on the 16th day of July, 1965 filed its petition in the Superior Court of Early County, Georgia, against C. C. Swann as sheriff praying that the sheriff show cause why he should not be required to pay all of the net sale proceeds to the bank or be attached for contempt. The sheriff filed his answer, admitting all paragraphs of the bank's petition and asked the court to direct him to pay the party entitled thereto.

The bank duly filed its traverse to the answer of the sheriff. On the 17th day of January, 1966, Charles S. Martin Distributing Company, Inc., filed its intervention praying that its claim of $1,382.04 be paid as a superior lien. On the 15th day of January, 1966, General Electric Credit Corporation filed its intervention praying that its claim of $30,861.40 be allowed as a superior lien to the lien of the First State Bank of Blakely.

"All parties . . . hereby stipulate that as of December 5, 1962 through December 20, 1962 the value of the stock of merchandise of D. D. Knighton, d/b/a Early Furniture Company exceeded $47,000.00; that the value of said stock of merchandise exceeded $31,000.00 at all times within the period of January 1, 1964 through January 11, 1964."

The trial judge entered a judgment ordering and directing the sheriff to turn over the net proceeds of the sale to the First State Bank of Blakely adjudicating that it held a superior lien to that of the other parties. General Electric Credit Corporation, in its brief, reduced its claim by $1,382.04 and conceded the superiority of the claim of Charles S. Martin Distributing Company, Inc., to that of General Electric Credit Corporation. Both General Electric Credit Corporation and Charles S. Martin Distributing Company, Inc., entered appeals to this court.