UNITED STATES of America,
Plaintiff,

v.

BIG Z WAREHOUSE, a partnership,
Defendant.

Civ. A. No. 576.

United States District Court,
S. D. Georgia,
Waycross Division.

April 3, 1970.

defendant of the 1964 tobacco crop of Oscar B. Chancey which was pledged as security for loans made to him by Farmers Home Administration in 1962 and 1963. The indebtedness was secured by bills of sale to secure debt covering certain farm machinery, livestock and all crops growing or to be grown on the debtor's 90 acre farm located 1 mile from Offerman, Ga.[1] After the Uniform Commercial Code went into effect a new security agreement was executed describing the same indebtedness and collateral and a financing statement was filed. Prior to the adoption of the Code liens on unplanted or growing crops were limited to the calendar year. Ga.Code § 67–1101. The 1964 security agreement and financing statement listed "crops."

During the selling season in 1964 the defendant acting as agent for Chancey auctioned 4,136 pounds of tobacco delivered to the warehouse by the debtor to be auctioned to the highest bidder. The total sales price was $2,602.30 and the proceeds less commissions were paid to Chancey by Big Z Warehouse. The Government realized nothing.

In opposing plaintiff's motion for summary judgment the defendant has raised several issues.

Richard C. Chadwick, Asst. U. S. Atty., Savannah, Ga., for plaintiff.

Larry E. Pedrick, Waycross, Ga., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LAWRENCE, Chief Judge.

Plaintiff moves for summary judgment in this action for conversion by

## I

▮ Is the Uniform Commercial Code, which became law in Georgia on January 1, 1964, applicable to a pre-Code indebtedness secured by a bill of sale to secure debt where a security agreement was substituted and a financing statement was filed after the Commercial Code went into effect? The Code covers "transactions entered into and events occurring on and after" the effective date.[2] I know of no reason why a debtor

---

1. The debt was evidenced by promissory notes in the respective amounts of $2,600 and $2,500. The first note was secured by a bill of sale to secure debt covering described livestock, equipment and "all crops of tobacco, cotton, corn * * * now planted and growing and to be planted within 12 months hereafter." The second note was secured by the same farm equipment, certain livestock plus some hogs and all crops.

2. § 109A–10–102. "Transactions validly entered into before the effective date * * * may be terminated, completed, consummated or enforced as required or permitted, by any statute or other law amended or repealed by this Act." In

and creditor cannot convert a pre-Code transaction into an Article 9 transaction.

## II

The defendant's principal contention seems to be that where additional collateral is given to secure an antecedent debt new value is necessary before a security interest will attach. See § 109A–9–204. Counsel says that no new or present value was given for the 1964 tobacco crop. He argues that the debtor had no rights in the collateral at the time of the Code transaction since the tobacco was not planted until later in that year. The requirement of an advance or other present value for perfection of a security interest on goods other than the original collateral is illustrated, says counsel for defendant, by § 109A–9–108. That Section deals with what is "new value" as distinguished from security for an "antecedent debt" in certain cases. I do not think that § 9–108 was ever intended by the authors of the Code to apply to situations like the present. It is "of importance principally in insolvency proceedings under the Federal Bankruptcy Act or state statutes which make certain transfers for antecedent debt voidable as preferences." Official Comment; 2 Anderson's Uniform Commercial Code, § 108:1, p. 490.

Perhaps present value, if necessary, is to be found in the mutual agreement of the parties to subject the secured loan to a different law than that which previously governed the transaction. However, the point is that no new value is necessary.[3] Under § 109A–9–204

(3) a security agreement may provide that collateral whenever acquired shall secure all obligations covered by the security agreement and this includes crops becoming such within seven years after the security agreement is executed. If no new value is necessary there, why here? Upon execution of the Article 9 security agreement in January, 1964, there was a completed transfer of a security interest in a future crop acquired by the debtor and no new consideration was necessary. "Value" is all that is necessary in such a case and under the Commercial Code value is given for rights if they are acquired as security for a pre-existing debt. § 109A–1–201(44)(b).

## III

Defendant challenges the adequacy of the description of the crop and the land. The collateral consisted of "crops" growing or to be grown on:

| "Farm(s) | Approximate Acreage | Direction and Distance From a Named Town |
|---|---|---|
| Oscar R. Chancey | 90 | 1 Mi. North of Offerman, Ga. |

All in the County of Pierce, State of Georgia"

---

Notice filing contemplates that the financing statement shall indicate "merely that the secured party who has filed may have a security interest in the collateral described." Further inquiry by another party is necessary to disclose the complete state of affairs. See Official Code Comment, Section 9–110:2. "Any description of personal property or real estate is sufficient whether or not it is

connection with the application of the Code to collateral acquired after its effective date but pursuant to a pre-Code instrument covering substitute and additional inventory see Charles S. Martin Distributing Company, Inc. v. First State Bank of Blakely, 114 Ga.App. 693, 152 S.E.2d 599.

3. *Cf.* § 109A–9–312(2) which concerns a "purchase money" type of security interest in a crop to be grown. In such cases "new value" is a requisite.

specific if it reasonably identifies what is described." § 109A–9–110. According to § 109A–9–402(3), the financing statement shall describe the real estate in which the "described crops are growing or are to be grown." Security agreements covering crops must contain "a description of the land concerned." § 109A–9–203(1) (b).

In Piggott State Bank v. Pollard Gin Company, 243 Ark. 159, 419 S.W.2d 120, the Supreme Court of Arkansas found the following description in the Financing Statement and the Security Agreement legally wanting:

> "CROPS. All of the following crops to be planted or growing within one year from the date hereof on the lands hereinafter described: 7 acres of cotton and 53 acres of soybeans to be produced on the lands of * * * Mary Gilbee; 4½ acres of cotton and 11 acres of soybeans to be produced on the lands of George Nixon; all of the above crops to be produced in Clay County, Arkansas during the year 1965."

■ The description in the present case is much more explicit. It would have sufficed under the chattel mortgage law. Read Phosphate Company v. Weichselbaum Company, 1 Ga.App. 420, 58 S.E. 122; First National Bank of Rome v. Rome Mercantile Co., 14 Ga.App. 99, 80 S.E. 210; Peterson v. Vidalia Chemical Company, 42 Ga.App. 490, 156 S.E. 468.[4] In Yancey Brothers Co. v. Dehco, Inc., 108 Ga.App. 875, 134 S.E.2d 828 the Court of Appeals said that the description in the security instrument must raise a warning flag, as it were, providing a key to the identity of the property." By way of a footnote dictum, Judge Eberhardt added that the Uniform Commercial Code "[does] not appear to work any change in this rule."

A crop does not have to be described as a tobacco crop when all crops grown on the land are collateral for the debt. The description reasonably identifies what is described. It is adequate.

## IV

In a special defense Big Z Warehouse says that any security interest the Government had in the crop was lost under the facts and circumstances. Defendant urges that plaintiff did not notify the defendant warehouseman of its lien and impliedly authorized its debtor to take the crop to the warehouse where it knew that under prevailing custom the tobacco would be sold at auction. Had the present case arisen this year the defense would have been good. Recently, the General Assembly amended § 109A–9–307 and exempted commission merchants of agricultural products from liability where a sale is made in the ordinary course of business without actual notice of a security interest. However, this case must be judged by 1964 Code standards and, so measured, the defense in question must fail.

■ An auctioneer is guilty of conversion in selling livestock for his principal although he acts in good faith and without knowledge that another party holds a bill of sale to secure debt on the cattle auctioned by him. United States v. LaGrange Stockyard, Inc., D.C., 270 F.Supp. 492.[5] In United States v. McCleskey Mills, Inc., 5 Cir., 409 F.2d 1216 an action for conversion was brought by the Government against a company engaged in the business of buying and selling farm products and making advances to farmers. The Court of Appeals for

---

4. In a pre-Code case in Illinois the following description was held adequate: "All crops of every kind which have been sown, grown, planted, cultivated or will be harvested during the year 1961 on the following described real estate, situated and being in the County of Marshall and State of Illinois, to wit: 253 acres that I have rented from William Barth and is located about 1 mile north of Washburn, Illinois." State Bank of Eureka v. Lynn L. Banta, Inc., 44 Ill.App.2d 325, 194 N.E.2d 669.

5. In 1969 the Commercial Code was amended to include as a protected buyer livestock commission merchants.

the Fifth Circuit held that the Commercial Code of Georgia, not federal law, controlled the transaction. Under § 109A–9–307 a "buyer in the ordinary course of business" does not include "a person buying farm products from a person engaged in farming operations." McCleskey Mills was not a protected buyer. Nor was Big Z Warehouse. Except for two baskets of the Chancey tobacco which defendant purchased at auction, it was not a buyer at all, merely a selling agent. "A security interest continues in collateral notwithstanding sale, exchange or other disposition by the debtor unless his action was authorized by the secured party in the security agreement or otherwise." § 109A–9–306(2). Granting lack of diligence by Farmers Home Administration in protecting its rights in the collateral, plaintiff's conduct falls very short of implied authority by it to the debtor and warehouseman to dispose of the collateral free of the security interest. Far from authorizing any such sale, the financing statement says that while proceeds are covered, "disposition of the collateral is not hereby authorized."

### V

Defendant's remaining contention is that it has not been shown that the tobacco was produced on the debtor's 90 acre farm. The only evidence bearing on this phase of the case is a statement in a deposition of an official of Big Z Warehouse that he "reasonably assumed that this was tobacco grown on his farm." It should be readily provable that Chancey did not grow the tobacco on any farm except the one described in the security agreement and that he did not have a tobacco allotment on any other. The burden is on the plaintiff to show the source of the crop claimed to have been converted.

Since there may be an issue of fact in this and perhaps another area I deny the motion for summary judgment. The case will be given a non-jury trial assignment and disposed of in accordance with my notions of the law.