**Charles E. SILJEG, Trustee in Bankruptcy for Henry House Packing Co., Inc., Plaintiff-Appellant,**

v.

**The NATIONAL BANK OF COMMERCE OF SEATTLE, Defendant-Appellee.**

No. 72–2752.

United States Court of Appeals, Ninth Circuit.

Jan. 13, 1975.

Thomas T. Glover (argued), Johnson, Quigley, Hatch & Loveridge, Seattle, Wash., for plaintiff-appellant.

Hans C. H. Jensen, Graham, McCord, Dunn, Moen, Johnston & Rosenquist, Seattle, Wash., for defendant-appellee.

Before CHOY and WALLACE, Circuit Judges, and PALMIERI,* District Judge.

## OPINION

WALLACE, Circuit Judge:

Henry House Packing Co., Inc., filed a voluntary petition under Chapter VI of the Bankruptcy Act on November 27, 1967, and was adjudicated a bankrupt on February 12, 1968. The trustee brought this action to recover an alleged preferential transfer under section 60a of the Bankruptcy Act, 11 U.S.C. § 96(a), against The National Bank of Commerce of Seattle (Bank) claiming that the Bank had received certain inventory and accounts receivable from the bankrupt corporation within four months of the filing of the petition. The district court dismissed the action on the Bank's motion for summary judgment. We reverse.

On August 8, 1966, Henry House Packing Co., Inc., (Henry House I) and the Bank executed a revolving chattel mortgage covering inventory of meat products, proceeds and existing and future accounts receivable. This security agreement was perfected under prior Washington law by filing appropriate documents with the county auditor. Wash. Rev.Code §§ 61.04.010–.090, *repealed by* § 62A.10–102(vi).

On June 26, 1967, Henry House I was merged into another Seattle meat packer, Empire Packing Co. (Empire). On that date, the required documents were filed with the Washington Secretary of State. Paragraph 11 of the "Agreement and Plan of Merger" provided that Empire was to be the surviving corporation and that its articles of incorporation and by-laws would govern the surviving enti-

ty. Paragraph 12 of the agreement stated:

> *Name.* As a part of this merger and as soon as practical thereafter the Articles of Incorporation of Empire shall be amended to provide that the name of the surviving corporation shall be HENRY HOUSE PACKING CO., INC. Harry J. Thompson is hereby granted the exclusive right to use the name "Empire" in connection with the organization and operation of a feed lot at Ephrata, Washington, which is authorized by paragraph 16.

Although no articles of amendment were filed (as would have been required to effect the name change properly), the Secretary of State on June 26, 1967, issued a certificate stating in part:

> I further certify that the provisions of the Merger Agreement changes [*sic*] the name of the surviving corporation to HENRY HOUSE PACKING CO., INC.; and I further certify that HENRY HOUSE PACKING CO., INC. is in good standing with all annual license fees paid to July 1, 1967.

The records of the Secretary of State's Office were altered to reflect the change of name from Empire to Henry House Packing Co., Inc. (Henry House II).

On June 30, 1967, the Bank and the surviving corporation, using the name "Henry House Packing Co., Inc." executed two security agreements covering inventory, accounts receivable, contract rights, and products and proceeds of collateral. A financing statement in the name of "Henry House Packing Co., Inc.," had been pre-filed on June 15, in accordance with the requirements of Article 9 of the Uniform Commercial Code, Wash.Rev.Code § 62A.9–101 *et seq.* The Washington enactment of the Uniform Commercial Code took effect on July 1, 1967. Wash.Rev.Code § 62A.10–101. This case concerns these June, 1967, transactions.[1] The outcome depends

---

* Honorable Edmund L. Palmieri, Senior United States District Judge, Southern District of New York, sitting by designation.

1. The obligations of Henry House I, perfected under the Chattel Mortgage Act, were as-

sumed by the acquiring corporation. Wash. Rev.Code § 23.01.500(5), repealed and superseded, July 1, 1967, by § 23A.20.060(5). They continued to be perfected by the Saving Clause of the newly-adopted Uniform Commercial Code. Uniform Commercial Code

upon a determination of whether the June 15 financing statement complies with the law.

Believing itself to be secured by the June 30 agreements, the Bank periodically advanced money to Henry House II. Although collections were made on these debts within four months of bankruptcy, these transfers were not preferential so long as the security agreements of June 30 were effective transfers and were "so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee." Bankruptcy Act § 60a(2), 11 U.S.C. § 96(a)(2). There is little doubt that the security agreements of June 30 attached and became enforceable on the date they were signed. The requirements of Uniform Commercial Code §§ 9–203(1)(b), 9–204(1) (1962), Wash.Rev.Code §§ 62A.9–203(1)(b), 62A.9–204(1), had been met: By its expressly authorized agent the debtor had signed a security agreement which contained a description of the collateral, value had been given in the form of advances prior to June 30, and the debtor had rights in the collateral.

But the agreement, even if valid, is subordinate to the rights of a lien creditor, such as the trustee in bankruptcy, if a valid financing statement is not filed. Uniform Commercial Code §§ 9–301(1)(b), (3), 9–302(1), 9–303(1) (1962); Wash.Rev.Code §§ 62A.9–301(1)(b), (3), 62A.9–302(1), 62A.9–303(1).

The trustee contends that the June 15 financing statement was ineffective because:

(1) The filing was technically in the wrong name and thus would not give notice to other creditors; and

(2) The filing was by a company which was merged into another corporation and thus did not exist after June 26, 1967.

Article 9 of the Uniform Commercial Code adopted a system of "notice filing" which requires only that a simple notice of the security agreement need be filed.

> The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.

Uniform Commercial Code § 9–402, Comment 2 (1962). Because financing statements are indexed under the name of the debtor, the entire system of notice filing depends upon use of the name of the debtor known to creditors.

■ The trustee argues that regardless of the certificates issued by the Secretary of State, an amendment of name had not been filed and, therefore, the "true name" of the surviving corporation was Empire. The trustee reasons that a creditor searching the records in the name of Empire would fail to discover any security interest filed under the name "Henry House Packing Co., Inc."; thus the filing did not perfect the Bank's security interest. In granting the Bank's motion for summary judgment, the district court rejected this contention and held that the "true name" of the surviving corporation was "Henry House Packing Co., Inc."

We do not believe, however, that the answer lies in the simple determination of whether the "true name" of the corporation was Empire or "Henry House Packing Co., Inc." The problem with such an analysis is that perfection, and thus priority of one creditor over another, would turn on a mistake of the Sec-

---

§ 10–102(2) (1962); Wash.Rev.Code § 62A.10–102(2). *See* Lack's Stores, Inc. v. Waisath, 464 S.W.2d 220 (Tex.Civ.App.), rev'd on other grounds, 474 S.W.2d 444 (Tex.1971).

The Bank argues that the Saving Clause serves to protect its post-UCC advances. *See* Charles S. Martin Distrib. Co. v. First State Bank of Blakely, 114 Ga.App. 693, 152 S.E.2d

599 (1966); *but see* 1 Benders UCC Service 377–79 (1973). However, the August, 1966, security agreement perfected under the Chattel Mortgage Act was with Henry House I which ceased to exist on June 26, 1967. This filing could not act to perfect post-merger advances to the surviving entity.

retary of State. The Uniform Commercial Code is directed toward commercial realities, not corporate technicalities. *See* Uniform Commercial Code § 1–102(1), (2) (1962); Wash.Rev.Code § 62A.1–102(1), (2). Indeed, one of the policies of Article 9 is "to discourage the fanatical and impossibly refined reading of . . . statutory requirements in which courts have occasionally indulged themselves." Uniform Commercial Code § 9–402, Comment 5 (1962). Section 9–402(5) provides that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Wash.Rev.Code § 62A.9–402(5). *See* In re Green Mill Inn, Inc., 474 F.2d 14 (9th Cir. 1973).[2]

■ Of course, in most cases it is helpful to determine the "true name" of the entity so long as it is recognized that this merely is a step toward the answer and not the answer itself. The inaccurate name is measured against the real name to determine if it was seriously misleading to other creditors. Most of the cases dealing with filings under an incorrect name concern individuals doing business under an assumed trade name. Thus a filing in the trade name of "West Coast Avionics" did not perfect a security interest in assets of the individual debtor Burris Haley Thomas; the omission of the debtor's real name was a fatal defect. In re Thomas, 466 F.2d 51 (9th Cir. 1972) (interpreting the California version of Uniform Commercial Code § 9–402).[3] The issue to be determined is not the true name of the entity, but whether the filing was misleading. Filing under an assumed trade name is effective unless it is misleading. *See, e. g.,* In re Platt, 257 F.Supp. 478, 482 (E.D.Pa. 1966).

The "true name" analysis is helpful, however, in the "doing business as" cases because in such cases there are, in effect, two entities. The individual debtor still has personal transactions unrelated to his business activities: He pays rent, buys food and contracts debts in his own name. His personal creditors may not know of security interests filed under the name in which he does business. Although the trustee argues to the contrary, the "doing business as" cases are not particularly helpful in the instant case because the surviving corporation most likely acted only under one name. (The trustee certainly does not allege otherwise.) The case before us more closely resembles one involving a truckdriver, Mr. Gustafson, who was issued a chauffeur's license erroneously showing

---

2. In this case the magnitude of the error depends upon the extent to which filing under the name "Henry House Packing Co., Inc." was misleading. We agree with Professors White and Summers, however, that the requirement of substantial compliance has two elements: that the error, if any, be minor, and that it not be seriously misleading. J. White & R. Summers, Uniform Commercial Code 835 (1972). Thus, for example, the debtor's failure to sign the financing statement would not be at all misleading since the statement does contain his name and address, but the omission might not be minor and thus not in substantial compliance. *See* In re Thrift Shoe Co., 502 F.2d 1211 (9th Cir. 1974) (trade name omitted contrary to requirement of California version of Uniform Commercial Code); In re HGS Technical Associates, 14 UCC Rep. 237 (1972), aff'd, 14 UCC Rep. 247 (E.D.Tenn.1973) (debtor's address omitted). We note this because the exhibit which purports to be a copy of the financing statement filed on June 15, 1967, is not signed by either the debtor or the secured party as required by Uniform Commercial Code § 9–402(1) (1962); Wash.Rev.Code § 62A.9–402(1).

3. For other cases in which an inaccurate name was found to be seriously misleading see, *e. g.,* In re Leichter, 471 F.2d 785 (2d Cir. 1972); In re Firth, 363 F.Supp. 369 (M.D.Ga. 1973); In re Hill, 363 F.Supp. 1205 (N.D.Miss. 1973); In re Eichler, 9 UCC Rep. 1406 (E.D. Wis.1971); In re Jones, 11 UCC Rep. 249 (Referee, W.D.Mich.1972); In re Merrill, 9 UCC Rep. 757 (Referee, D.Neb.1971); In re Levins, CCH Bankruptcy Rep. ¶ 63,556 (Referee, E.D.N.Y.1970); In re Osborn, 6 UCC Rep. 227 (Referee, D.Mich.1969); In re Brawn, 6 UCC Rep. 1031 (Referee, D.Me.1969) (alternate holding); Bank of North America v. Bank of Nutley, 94 N.J.Super. 220, 227 A.2d 535 (1967); John Deere Co. v. William C. Pahl Constr. Co., 34 A.D.2d 85, 310 N.Y.S.2d 945 (1970); National Cash Register Co. v. Valley Nat'l Bank, 5 UCC Rep. 396 (N.Y.Sup.Ct.1968).

his name as "Gustavsen." Unable to fight the bureaucracy and purely as a matter of personal convenience, he thereafter used and spelled his name as it appeared on his license. The bankruptcy judge recognized that Gustafson's creditors dealt with him as Gustavsen and a financing statement containing this adopted and publicly accepted name was found to be not seriously misleading. In re Gustafson, 14 UCC Rep. 231 (Bankruptcy Judge, W.D.Okl.1973). Cf. Avco Delta Corp. Canada Ltd. v. United States, 459 F.2d 436 (7th Cir. 1972); In re Excel Stores, Inc., 341 F.2d 961 (2d Cir. 1965); In re A&T Kwik-N-Handi, Inc., 12 UCC Rep. 765 (Referee, D.Ga. 1973); In re Hatfield Constr. Co., 10 UCC Rep. 907 (Referee, M.D.Ga.1971); National Cash Register Co. v. Firestone & Co., 346 Mass. 255, 191 N.E.2d 471 (1963); In re Nara Non Food Distrib. Inc., 66 Misc.2d 779, 322 N.Y.S.2d 194 (Sup.Ct.1970), aff'd mem., 36 A.D.2d 796, 320 N.Y.S.2d 1014 (1971).

As in *Gustafson,* the question in the present case is not whether "Henry House Packing Co., Inc." was the true name of the surviving entity but whether creditors of the corporation would have been seriously misled. Was information available in the relevant business community which put creditors on notice that they should have searched financing statements under the name "Henry House Packing Co., Inc."? *Cf.* Uniform Commercial Code § 1–201(27) (1962); Wash.Rev.Code § 62A.1–201(27). It is likely that the surviving corporation did business under only one name and it may well be that a filing under that name was not seriously misleading.

■ However, we cannot decide this question as it is one of fact to be determined by the district court. The merger agreement between Empire and Henry House I contemplated that the new entity was to operate under the name "Henry House Packing Co., Inc." Although the intent of the merging parties and the belief of the Bank do not directly answer the question of whether other creditors could have been misled, these facts do indicate that the surviving corporation carried on business as "Henry House Packing Co., Inc." But because the district court applied the wrong legal test and never found whether there was substantial compliance with the requirements of section 9–402, we remand the case for determination of this fact.

As to the trustee's second contention, it is true that Henry House I ceased to exist on June 26, 1967. Wash.Rev.Code § 23.01.500(2), repealed and superseded July 1, 1967, by § 23A.20.060; *see* 15 W. Fletcher, Cyclopedia of the Law of Private Corporations 100 (M. Wolf ed. 1973). A filing on behalf of Henry House I could not act to perfect a security agreement later executed by Henry House II. Although each had the same name, each was a corporation with different stockholders, different assets, different articles and different by-laws. But the question is, on behalf of which Henry House was the filing made? William Burke was president of both Henry House I and Henry House II. The filing might well have been for Henry House II. It is perfectly consistent with Code section 9–303 to file before the security interest attaches. This allows the secured party to obtain protection while the security agreement is negotiated. Moreover, the address on the financing statement is that of the surviving corporation and not that of Henry House I as indicated on the latter's filing with the county auditor under its previous chattel mortgage with the Bank.

On the other hand, Henry House I also had a reason to file a financing statement like that filed on June 15. Such a filing may have been the only way to maintain perfection on advances made by the Bank under the prior security agreement but after the Washington version of the Uniform Commercial Code became effective. *See* Wash.Rev.Code § 62A.10–101; Uniform Commercial Code § 10–101 (1962). The question of on whose behalf the June 15 filing was made is another unresolved issue of fact to be determined by the district court.

The judgment is reversed and the cause remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.