In the Matter of Rufus Bartlett
COODY, Debtor.

Bankruptcy No. 86–50433.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

March 25, 1986.

Jerome L. Kaplan, James P. Smith, and
Wesley J. Boyer, Macon, Ga., for Rufus
Bartlett Coody, debtor.

John Carswell Pridgen, Vienna, Ga., for
Bank of Dooly.

### MEMORANDUM OPINION
### AND ORDER

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

On March 10, 1986, Rufus Bartlett
Coody, Debtor, filed a petition under Chapter 11 of the Bankruptcy Code. Before the
Court is the "Motion to Use Cash Collateral" that was filed by Debtor on March 11,
1986. The motion came on for hearing on
March 18, 1986, and the Court, having considered the evidence presented and the arguments of counsel, now publishes its opinion.

The initial issue for the Court's determination is whether under the security agreement executed on February 15, 1985, the Bank of Dooly has a properly perfected security interest in certain crops and crop proceeds under Georgia law. Under the security agreement, Debtor granted to the Bank of Dooly a security interest in "[a]ll crops grown on real estate shown on exhibit A." Exhibit A identifies and specifically describes three tracts of land, which includes Land Lot Numbers 172, 180, 181, 203, and 204. The financing statement filed on February 15, 1985, to perfect this security agreement states that the financing statement covers crops grown on land owned by Debtor, crops grown on land rented by Debtor, and crop proceeds. The financing statement lists the following land lot numbers as lots owned by Debtor—Land Lot Numbers 180, 181, 203, and 204; and the following land lot numbers as lots rented by Debtor—Land Lot Numbers 139, 140, 166, 168, 169, 179, 188, 198, 199, 200, 201, 202, and 218. Debtor asserts that the Bank of Dooly does not have a properly perfected security interest in the crops Debtor grew on rented land because the security agreement does not specifically cover those crops.

Under Georgia law, a security interest is not enforceable against a debtor with respect to the collateral and does not attach unless "the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown, a description of the land concerned; ..." O.C.G.A. § 11–9–203(1)(a) (Michie 1982). *See United States v. Big Z Warehouse*, 311 F.Supp. 283, 286 (S.D.Ga. 1970) ("[s]ecurity agreements covering crops must contain 'a description of the land concerned.'"); *In re Couch*, 5 U.C.C. Rep.Serv. 255, 257 (Bankr.M.D.Ga.1968). Georgia Code section 11–9–110 [1] governs the sufficiency of the description of land contained in a security agreement. Under this section, any description of land is sufficient if it reasonably identifies what is described. O.C.G.A. § 11–9–110 (Michie 1982). Several courts addressing the issue of the sufficiency of a description of growing crops under this section have upheld descriptions listing the name of the landowner, the approximate number of acres involved, the county, and the direction and distance of the land from a named town. *First National Bank of Franklin County, Tennessee v. Smith*, 447 So.2d 705, 707 (Ala.1984) (citing *United States v. Newcomb*, 682 F.2d 758 (8th Cir.1982); *United States v. Oakley*, 483 F.Supp. 762 (E.D. Ark.1980); *United States v. Smith*, 22 U.C. C.Rep.Serv. 502 (D.N.D.Miss.1977); *United States v. Big Z Warehouse*, 311 F.Supp. 283 (S.D.Ga.1970)). Georgia courts have held that the description of the collateral is sufficient if the key to the identity of the collateral is present. *In re A & T Kwik-n-Handi, Inc.*, 12 U.C.C.Rep.Serv. 765, 766 (Bankr.M.D.Ga.1973); *Yancey Brothers Co. v. Dehco, Inc.*, 108 Ga.App. 875, 877, 134 S.E.2d 828, 830 (1964); .*United States v. Big Z Warehouse*, 311 F.Supp. at 286.

This Court finds that the Bank of Dooly's security agreement does not contain a sufficient description under Georgia law in order for the Bank of Dooly to have a security interest in the crops grown on the rented land and the resulting crop proceeds. The security agreement contains absolutely no reference to or description of the rented land on which the crops were grown. The failure to include such a description leads the Court to conclude that no security interest in the crops grown on the rented land was ever created. *See 8 R. Anderson, Uniform Commercial Code § 9–203:30 (3d ed.1985).* The description of the land in the security agreement cannot be enlarged by filing a financing statement in which the land is more broadly described in order to cover land not included in the security agreement. *Id. See also Tri-County Livestock Auction Co. v. Bank of Madison*, 228 Ga. 325, 329, 185 S.E.2d 393, 396 (1971). Under the security agreement, the Bank of Dooly took a security interest in only the crops grown on the land listed

---

1. O.C.G.A. § 11–9–110 (Michie 1982).

in Exhibit A, which includes Land Lot Numbers 172, 180, 181, 203, and 204, and the crop proceeds from that land.

The Court now must determine if the Bank of Dooly properly perfected its security interest in the crops grown on Land Lot Numbers 172, 180, 181, 203, and 204. In order for a security agreement to be properly perfected, Georgia law requires a creditor to file a financing statement covering his security interest. O.C.G.A. §§ 11–9–303(1), 11–9–302(1) (Michie 1982). *See Tidwell v. Bethlehem Steel Corp. (In re Georgia Steel, Inc.)*, 56 B.R. 509, 515 (Bankr.M. D.Ga.1985). Section 11–9–402(5) of the Georgia Code provides that "[a] financing statement covering crops growing or to be grown ... must show that it covers this type of collateral, must recite that it is to be indexed in the real estate records, and the financing statement must contain a description of the real estate." O.C.G.A. § 11–9–402(5) (Michie Supp.1985). Section 11–9–110 of the Georgia Code determines what type of description is sufficient to comply with section 11–9–402(5).

■ The Court finds that the financing statement filed by the Bank of Dooly sufficiently describes the crops grown on Land Lot Numbers 180, 181, 203, and 204 for the Bank of Dooly to have a properly perfected security interest in those crops and the proceeds from those crops. The Court, however, finds that the Bank of Dooly did not sufficiently describe the crops grown on Land Lot Number 172; therefore, its security interest in the crops grown on that land lot was not perfected. As previously noted, the financing statement covered only Land Lot Numbers 180, 181, 203, and 204. No reference was made to crops grown on Land Lot Number 172. Without a reference to Land Lot Number 172, a third party would not be put on notice that the crops grown on that land lot and the resulting crop proceeds represent collateral in which the Bank of Dooly claims a security interest. *Goodman v. Schenck (In re Swafford Furniture Co. of College Park,*

*Inc.)*, 10 B.R. 293, 295 (Bankr.N.D.Ga. 1981); *Thomas Ford Tractor, Inc. v. North Georgia Production Credit Association*, 153 Ga.App. 820, 822, 266 S.E.2d 571, 572–73 (1980). *See generally* J. White & R. Summers, *Uniform Commercial Code* § 23–16, at 964 (2d ed.1980). The Court concludes that the Bank of Dooly has a perfected security interest in the crops grown on Land Lot Numbers 180, 181, 203, and 204, but the Bank of Dooly has only an unperfected security interest in the crops grown on Land Lot Number 172.

■ Having concluded that the Bank of Dooly has no security interest in the crops grown on the rented land and an unperfected security interest in the crops grown on Land Lot Number 172, the Court must now decide how the Bankruptcy Code applies in this situation. Section 544(a)(1) of the Bankruptcy Code grants to a trustee in bankruptcy the status of a hypothetical lien creditor who is deemed to have perfected his interest as of the date of the filing of the bankruptcy petition. 11 U.S.C.A. § 544(a)(1) (West Supp.1985). In a Chapter 11 case, such as this, in which no trustee has been appointed, section 1107(a) of the Bankruptcy Code[2] grants to a debtor, in his capacity as a debtor in possession under section 1101 of the Bankruptcy Code,[3] certain of the trustee's rights and powers, one of which is the status of a hypothetical lien creditor under section 544(a)(1). *See Tinsley & Groom v. West Kentucky Production Credit Association (In re Tinsley & Groom )*, 49 B.R. 85, 92 nn. 1–2, 12 Bankr. Ct.Dec. 1368, 1371 nn. 1–2 (Bankr.W.D.Ky. 1984); *Cash Register Systems, Inc. v. Munsey Corp. (In re Munsey Corp.)*, 10 B.R. 864, 866, 7 Bankr.Ct.Dec. 674, 675 (Bankr.E.D.Penn.1981); *cf. Rechnitzer v. Boyd (In re Executive Growth Investments, Inc.)*, 40 B.R. 417, 420, 11 Bankr.Ct. Dec. 1239, 1241 (Bankr.C.D.Cal.1984). In this case, Debtor has the status of a hypothetical lien creditor. Under Georgia law, an unsecured creditor and an unperfected secured creditor are subordinate to the

---

**2.** 11 U.S.C.A. § 1107(a) (West Supp.1985).

**3.** 11 U.S.C.A. § 1101 (West 1979).

claim of a subsequent intervening lien creditor.[4] The Bank of Dooly thus has no claim to the $42,900 in cash proceeds from the rented land.

Debtor does not dispute that the Bank of Dooly has a validly perfected security interest in the $39,000 in proceeds attributable to crops grown on land owned by Debtor. Under section 363 of the Bankruptcy Code,[5] Debtor may not use this $39,000 in cash collateral unless the Bank of Dooly consents or Debtor has demonstrated that the Bank of Dooly's security interest is adequately protected. The Court notes that some of the collateral involved herein is in the form of bales of cotton, but the Court will consider them as if they were cash collateral because as soon as the bales are sold, the proceeds will be cash collateral.

■ As adequate protection, Debtor proposes to give the Bank of Dooly a first lien on the cotton and peanut crops that Debtor will shortly plant, and also proposes assignment of a $10,000 Agricultural Stabilization and Conservation Service (ASCS) set aside payment. Debtor also proposes to assign his crop insurance to the Bank of Dooly. The question presented is whether this is sufficient adequate protection for $39,000 in cash collateral so that the Court may authorize its use. Debtor needs the use of the cash collateral to plan his 1986 cotton, peanut, and silage crops. Because the cotton and peanut crops generate income for Debtor, and the silage is needed to feed Debtor's dairy cattle, the Court is persuaded that the three crops are necessary for Debtor to have a chance to reorganize under Chapter 11 of the Bankruptcy Code.

Debtor's testimony is that he expects a $49,000 profit from his 1986 cotton and peanut crops. He bases this estimate upon prior crop yields and the fact that irrigation is available this year to avoid the drought problems that he suffered last year. The undisputed testimony is that Debtor will participate in the government price support program, which will give added protection for the crops. Debtor also has agreed to assign his crop insurance to the Bank of Dooly and estimates that if he suffered a total loss on his crops, he would receive $141,800 in insurance proceeds.

Debtor has agreed to assign the $10,000 ASCS payment to the Bank of Dooly. While there may be some risk involved, it is relatively certain that the payment will be made to Debtor and thus through the assignment to the Bank of Dooly.

The Court is persuaded that Debtor has demonstrated that his offer of adequate protection is more than enough to protect the interest of the Bank of Dooly, and that Debtor, therefore, should be authorized to use the $39,000 in cash collateral. While the Court is unable to determine from the evidence what part of the cash collateral is attributable to Land Lot Number 172, the fact that the Bank of Dooly does not have a validly perfected security interest in the crops grown on that land lot leads to the conclusion that the Bank of Dooly may not have a valid claim to all of the $39,000 which the Court has considered as cash collateral.

Accordingly; it is

ORDERED that the Motion to Use Cash Collateral filed by Rufus Bartlett Coody, Debtor, on March 11, 1986, is granted; and it is further

ORDERED that the Bank of Dooly is hereby directed to endorse the joint checks which are made out to it and Debtor in order to comply with this order of the Court; and it is further

ORDERED that Debtor is authorized to sell the bales of cotton upon which the Bank of Dooly has a security interest and to use the proceeds from the sale in accordance with this order; and it is further

---

**4.** *See Nicholson v. First Investment Co.,* 705 F.2d 410, 413 (11th Cir.1983); *United States Fidelity & Guaranty Co. v. Leach (In re Merts Equipment Co.),* 438 F.Supp. 295, 298 (M.D.Ga.1977); O.C.G.A. § 11–9–301(1)(b), (3) (Michie 1982).

**5.** 11 U.S.C.A. § 363 (West 1979 & Supp.1985).

ORDERED that Debtor strictly comply with the terms of the adequate protection which he has offered to the Bank of Dooly.