HORTON DAIRY, INC., and First National Bank of Conway, Appellees/Cross–Appellants,

v.

UNITED STATES of America, Appellant/Cross–Appellee.

Nos. 91–3730, 91–3829.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 18, 1992.

Decided Feb. 25, 1993.

Janet Jones, Washington, DC, argued (James A. Bruton, Gary R. Allen, William Estabrook and Janet Kay Jones, on the brief), for appellant/cross-appellee.

Curtis L. Bowman, Little Rock, AR, argued (Eugene G. Sayre, on the brief), for appellees/cross-appellants.

Before HANSEN, Circuit Judge, HEANEY and ROSS, Senior Circuit Judges.

HANSEN, Circuit Judge.

This action originated as a wrongful levy suit initiated by Horton Dairy, Inc. (HDI) and the First National Bank of Conway (the Bank). The Internal Revenue Service (IRS) levied upon property held by HDI and in which the Bank claimed a secured interest in order to satisfy the tax liabilities of HDI's majority shareholders, Jack and Arlene Horton (the Hortons). At trial the district court found the levies to be valid, holding that HDI was merely the Hortons' alter ego and that the Bank had not properly perfected its interest in HDI's property. The district court further held that a nonparty, Shelly Carter,[1] the Hortons' daughter, had given value for a 49% interest in HDI. To protect Carter's interest, the district court judicially created a partnership between the Hortons and Carter and ordered the United States to pay Carter 49% of the proceeds of any past and future levies executed against HDI's property. (Amended Judgment, October 8, 1991.)

The United States appeals the district court's order with respect to the rights of Shelly Carter. HDI and the Bank cross-appeal, asserting that the district court erroneously validated the levies when it decided the alter ego and lien priority issues. We affirm in part and reverse in part.

---

**1.** The parties refer to Ms. Carter as Shelly Carter, while the district court transcript indicates Ms. Carter's first name is "Shelby."

## I. BACKGROUND

### A.

Jack and Arlene Horton incorporated Horton Dairy, Inc., an Arkansas corporation, in October 1987. At the time of incorporation, Jack and Arlene each owned 150 shares of stock. One month later, the Hortons transferred their personal home and 100 acres of a dairy farm to HDI. Milking operations began on the farm in March 1989, approximately one and a half years after incorporation. On January 4, 1989, the Hortons transferred a 49% interest in HDI stock to their daughter, Shelly Carter. Ms. Carter and her husband Leon eventually moved into a home on the farm, and each worked at least part time at the dairy. In March 1990, the State of Arkansas revoked HDI's corporate charter due to the corporation's failure to file its Corporate Franchise Tax Reports and to pay the accompanying taxes as required by state law.

In the course of its operations, HDI obtained two loans from the Bank. On March 23, 1989, the Bank loaned the corporation $123,150, and on October 20, 1990, HDI obtained a second loan in the amount of $60,000. In order to repay the loan, HDI directed American Milk Producers, Inc. (AMPI), buyer of HDI's raw milk, to divert $1,983.26 of the amount it would have otherwise paid HDI for its milk (which would be an account receivable of HDI) each month directly to the Bank. HDI also pledged cattle, land, and the cash it held on deposit with the Bank as security for the loans, and both the Hortons and the Carters personally guaranteed the loans.

The Hortons' debts to the IRS that form the basis for the disputed levy arose not out of the dairy business, but out of their association with a Texas corporation known as the Federal Dry Wall Company, Inc. (FDWI). In 1985, Jack Horton had obtained a controlling interest in FDWI, and by December of that year the company had fallen behind in its payment of federal employment taxes. Jack was the president of FDWI and Arlene was its secretary. The IRS assessed the unpaid taxes against the Hortons on April 18, 1988, and on January 13, 1989, the IRS filed notices of tax liens against them seeking some $89,386.52.

In June 1990, the IRS served its notices of levy to collect on the assessment. Because HDI's corporate charter recently had been revoked, the IRS named "Jack and Arlene Horton DBA Horton Dairy, Inc." in the levies in order to recover the taxes owing. On June 4, the IRS served a levy on AMPI for the accounts receivable, and on June 5, it served the Bank for the corporate checking account. Pursuant to these levies, the IRS successfully collected roughly $12,000.

On June 13, 1990, approximately one week after the IRS served the tax levies, the Hortons reestablished HDI's corporate viability by paying the delinquent franchise taxes and filing the necessary reports. In this same month, HDI also filed federal and state corporate tax returns for the first time. In October 1990, as a result of these developments, the IRS filed additional notices of tax liens in its continuing effort to collect on the FDWI assessment. In these additional notices, the IRS specifically named HDI as the alter ego of Jack and Arlene Horton.

### B.

On November 5, 1990, HDI and the Bank initiated this lawsuit. The complaint alleged that the IRS had wrongfully levied upon their property in order to satisfy the delinquent tax obligations of Jack and Arlene Horton as individuals. HDI and the Bank requested a preliminary injunction to stop the IRS from executing any future levies on property in which they held a secured interest. After a hearing, the district court enjoined the IRS from executing any future levies but did not order a return of any property seized pursuant to the previously executed levies. The district court also found that, although the Bank may have had a secured interest in HDI's assets, the Bank failed to perfect that interest in accordance with the requirements of Article 9 of the Uniform Commercial Code. According to the district court, the IRS's right to the property was superior to the rights of the Bank.

At the trial approximately ten months after the issuance of the preliminary injunction, the district court determined that HDI was the alter ego of the Hortons and that the levy against HDI's property to satisfy the Hortons' debts was not wrongful. At the preliminary injunction hearing, the district court previously had expressed concern about protecting Shelly Carter's purported 49% interest in HDI. As noted before, Shelly Carter is a nonparty and did not seek to intervene in this litigation. The district court found at trial that Carter had given valuable consideration for her interest in HDI. Thus, while the district court dissolved the broad injunction against the IRS, it required the IRS to pay to Shelly Carter 49% of all past and future levies it might impose upon HDI's property, finding that "... basically Horton Dairy is a partnership between Shelby Carter and Mr. and Mrs. Horton and I think that of the monies that have been seized, I think 49% of those belong to Miss Carter." Appellant's Record Appendix (App.) at 270.

All of the parties appeal the district court's order. HDI and the Bank appeal the findings that HDI was merely the alter ego of the Hortons and that the Bank's security interest in the property levied upon was inferior to the federal tax lien. The United States urges affirmation of these two findings, but asserts that the district court erred by awarding Shelly Carter 49% of any future levies imposed by the IRS on HDI's property.

## II. DISCUSSION

### A.

■ We review the district court's finding that HDI was the alter ego of Jack and Arlene Horton under a clearly erroneous standard. *See Miller v. Tony and Susan Alamo Found.*, 924 F.2d 143, 148 (8th Cir. 1991); *Minn. Power v. Armco, Inc.*, 937 F.2d 1363, 1368–69 (8th Cir.1991). Several factors should be considered when determining whether a corporation is a taxpayer's alter ego. Among these factors are the absence of corporate formalities, the

commingling of corporate and personal funds and expenses, and the family relationship between corporate officers and the taxpayer. *United States v. Walton,* 909 F.2d 915, 928 (6th Cir.1990); *Shades Ridge Holding Co., Inc. v. United States,* 888 F.2d 725, 729 (11th Cir.1989) (citations omitted).

■ In this case, the district court found that upon "look[ing] at all the facts and all the history of the corporation ... the corporation functioned as really just an appendage of the Hortons in this case and their business." Trial transcript (Tr.) at 269. The district court found that many expenditures made on the corporate account appeared instead to be personal in nature. At the very least, the Hortons failed to keep appropriate records in order to distinguish between corporate and personal expenses.[2] *See Walton,* 909 F.2d at 928 ("woefully inadequate" recordkeeping supportive of alter ego finding). Arlene Horton testified that with regard to the separation of personal and corporate funds, "[i]t was just all the same money," "it was just back and forth." Tr. at 255–56. In addition, the district court observed that the named corporate treasurer, Leon Carter, the Hortons' son-in-law, "obviously never functioned in that role at all," tr. at 269, as Mr. Carter testified that he was unaware of HDI's current financial status. Tr. at 262. Finally, HDI failed to maintain corporate formalities regarding franchise taxes as required by Arkansas state law, and the corporate charter was revoked in March 1990. HDI did not file a federal or state tax return until June 1990, when the Hortons reestablished the corporate charter.

HDI and the Bank offer minimal evidence to refute the district court's finding that HDI was the Hortons' alter ego. Rather, HDI and the Bank merely assert that some of the checks that on the surface appear to cover personal expenses were in fact issued to cover dairy-related costs. The district court stated on the record, however, that it would not base an alter

---

**2.** The record shows checks written on the corporate account to, among others, Wal–Mart, Kroger, Conway Ob–Gyn Clinic, Lake Liquor, Readers Digest, and Anna's Beauty Shop.

ego determination on "one check to Wal-Mart or one check to Kroger or one missed franchise tax payment" alone. Tr. at 268–69. Rather, the totality of the circumstances led to the finding that HDI was the alter ego of the Hortons. From our review of the evidence, we agree with the conclusion that "[t]he only thing 'corporate' about Horton Dairy was the 'Inc.' at the end of its name." Answering/Reply Brief of United States at 8. Accordingly, we hold the district court's finding that HDI was the alter ego of Jack and Arlene Horton was not clearly erroneous, and we affirm.[3]

### B.

■ Section 6321 of the Internal Revenue Code provides as follows:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. The lien arises in favor of the government at the time an assessment of the unpaid taxes is made against the delinquent taxpayer. 26 U.S.C. § 6322. *See also United States v. Cent. Bank of Denver*, 843 F.2d 1300, 1306 (8th Cir.1988) ("In general, a federal tax lien attaches at the time the tax assessment is made."). In this case, on April 18, 1988, the IRS assessed against the Hortons the delinquent taxes accrued during their association with FDWI. On January 13, 1989, the IRS filed a notice of federal tax lien against the Hortons. We review de novo the district court's legal conclusion that the IRS had a valid, superior lien on the assets of HDI. *See Liberty Mut. Ins. Co. v. States*, 940 F.2d 1179, 1181 (8th Cir.1991) (de novo review of "legal conclusions regarding both federal and state law") (citations omitted),

*cert. denied,* —— U.S. ——, 112 S.Ct. 874, 116 L.Ed.2d 778 (1992).

### 1.

HDI and the Bank assert that because the tax liens were filed against the Hortons the IRS never established a valid tax lien against the property of HDI. Indeed, the IRS did not name HDI until it served its notices of levy in June 1990, in which it referred to "Jack and Arlene Horton DBA Horton Dairy, Inc." Then, in October 1990, the IRS filed additional notices of tax liens and specifically named HDI as the alter ego of Jack and Arlene Horton. According to HDI and the Bank, the sequence of these events resulted in the IRS being in a "nonlien" situation. They argue that because no tax assessment had been made specifically against HDI by the time of the levy, there logically could have been no federal tax lien against the assets of HDI. In other words, HDI and the Bank claim the IRS levied on property against which it had filed no lien.

When the lien arose in favor of the United States, it was "a lien ... upon all property and rights to property, whether real or personal, belonging to [the taxpayer]." 26 U.S.C. § 6321. Given that the district court properly found HDI to be the alter ego of the Hortons, with the corporate structure having no substantive effect, the IRS was authorized to levy against the property held in the name of HDI.[4] *See F.P.P. Enters. v. United States*, 830 F.2d 114, 118 (8th Cir.1987) ("Property held in the name of an entity which is the alter ego of a taxpayer may be levied on to satisfy the tax liabilities of the taxpayer."). *See also Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 728–29 (11th Cir.1989) ("Property of the ... alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability.") (citing *G.M. Leas-*

---

3. With respect to the alter ego finding, HDI and the Bank also dispute the contention that the Hortons and the Carters should have reported as income the rent-free lodging they received while working on the farm. The district court, however, did not name this as a basis for its alter ego determination. Because we do not find this factor dispositive in the alter ego analysis, we do not address the issue.

4. HDI and the Bank contend that traditional alter ego law does not apply when an innocent shareholder or a good faith creditor deals with a sham corporation. Because the parties offer no support for this bald assertion, we decline to address the issue.

*ing Corp. v. United States,* 429 U.S. 338, 350–51, 97 S.Ct. 619, 626, 50 L.Ed.2d 530 (1977)). By naming the Hortons in the tax liens, the IRS was entitled to levy upon property that functionally belonged to the Hortons yet nominally was held by the alter ego HDI. The IRS properly levied upon assets held in the name of HDI, the Hortons' alter ego. *See Loving Saviour Church v. United States,* 728 F.2d 1085 (8th Cir.1984).[5]

### 2.

HDI and the Bank's second argument regarding the legitimacy of the levy focuses on the idea that a levy by itself does not determine the rights to and priorities in the property at issue. Specifically, they assert that "[t]he fact that the IRS obtained possession of the property in questions [sic] does *not* create a lien in favor of the government or otherwise enhance the government's rights, if any, to this property." Brief of HDI and the Bank at 46. This argument is dependent upon a finding that the liens themselves were faulty due to the fact that they were filed against the wrong entity. Because HDI is the alter ego of the Hortons and the IRS properly enforced the liens, this argument lacks merit.

### 3.

■ The final argument concerning the IRS's lien and subsequent levy applies only to the HDI corporate checking account. The Bank contends that, in accordance with Arkansas law, its interest in the account had priority over the federal tax lien.[6] For this contention it relies on 26 U.S.C. § 6323(h)(1)(A), which provides in part that "[a] security interest exists at anytime … if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation." Specifically, the Bank contends

that because a bank is entitled to a right of setoff under Arkansas law it had a protected, superior lien on the HDI account.

"Choate state created liens take priority over later filed federal liens [ ] while inchoate liens do not." *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 88, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963) (citations omitted). Federal law determines choateness, and "[t]he federal rule is that liens are 'perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" *Id.* at 89, 83 S.Ct. at 1655 (quoting *United States v. New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954)). Until the Bank exercised its claimed right to a setoff, its right of setoff remained inchoate. *Cent. Bank of Denver,* 843 F.2d at 1310. An unexercised right of setoff cannot defeat a government tax lien. *See Peoples Nat. Bank of Washington v. United States,* 777 F.2d 459, 462 (9th Cir.1985) (bank's common-law right of setoff against depositor's account when unexercised does not defeat a tax lien.). "Generally, three steps are necessary to exercise the setoff right: 1) The decision to exercise the right; 2) some action that accomplishes the setoff; and 3) some record which evidences that the right of setoff has been exercised." *Cent. Bank of Denver,* 843 F.2d at 1310 (citations omitted). The Bank fails to assert a set of facts to support a finding that it took affirmative steps to exercise any such right it may have had. We affirm the district court's order finding that the IRS had the superior interest in the bank account assets of HDI.

### C.

■ The final issue before this court concerns the district court's order that the United States pay 49% of the proceeds of

---

5. We note that HDI and the Bank assert in another portion of their brief that "[b]ecause the lien arising under Section 6321 attaches to all real and personal property of the taxpayer, such lien extends to the assets of a taxpayer's nominee, instrumentality or alter ego." Brief of HDI and the Bank at 23 (citations omitted).

6. First National does not argue that it perfected its lien in accordance with the requirements of Article 9 of the Uniform Commercial Code.

any levies executed against the property of HDI to Shelly Carter. Because we find the district court had no jurisdiction over Shelly Carter, we vacate this aspect of the district court's decision.

The tax code provides that third persons other than the taxpayer may bring a civil action to assert an interest in property levied upon by the United States. Section 7426(a)(1) specifically provides:

> (1) Wrongful levy.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

26 U.S.C. § 7426(a)(1). In this case, the IRS executed a levy against property held by HDI. As a third party who arguably "claims an interest in" this property, Shelly Carter had the statutory authority to bring a civil lawsuit in order to adjudicate her rights with respect to that property, or she could have intervened in the present lawsuit. She did neither.

Currently before the court, however, is the lawsuit that was brought by HDI and the Bank. Shelly Carter is not a party to this suit and was thus not in a position to assert her interests as an alleged victim of a wrongful levy. This is not a situation in which an individual simply failed to follow the procedural formalities of intervention. *See Gatz v. Southwest Bank of Omaha,* 836 F.2d 1089 (8th Cir.1988). Rather, Carter failed to make an appearance in any fashion other than as a witness. Without an affirmative act on the part of Carter to enter the lawsuit, the district court lacked jurisdiction to determine her rights.[7] Having determined the court had no jurisdiction, we need not address whether the

court could judicially create the partnership it did. Accordingly, the district court's order granting her a percentage of the levies is vacated.

## III. CONCLUSION

We affirm the order of the district court finding HDI to be the alter ego of Jack and Arlene Horton and finding that the IRS had a valid, superior lien on the accounts receivable and the corporate bank account. We vacate, however, that portion of the order determining the rights of Shelly Carter.

---

7. While Ms. Carter is not a party to the instant wrongful levy action, she is free to contest any future levy executed by the IRS provided she meets the statutory requirements, including the applicable statute of limitations. *See* 26 U.S.C. § 7426(h); 26 U.S.C. § 6532(c).