# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-1046
_____

Allstate Financial Corporation,     *
                                     *
           Appellee,              *
                                     *     Appeal from the United States
      v.                       *     District Court for the
                                       *     District of Minnesota.
United States of America,        *
                                       *
           Appellant.            *

_____

Submitted: November 21, 1997

Filed: April 3, 1997
_____

Before FAGG, WOLLMAN, and HANSEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

The United States appeals from a judgment in favor of Allstate Financial Corp. (Allstate) in this action for wrongful levy. The district court[1] held that Allstate's security interest in the accounts receivable of Dittrich of Minnesota, Inc. (Dittrich), and Zappia Transportation Services, Inc. (Zappia), had priority over the tax lien of the Internal Revenue Service (IRS). We affirm.

_____

[1]The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

Dittrich is a trucking company incorporated in Minnesota, with its chief executive office in Minnesota. Zappia is a trucking company incorporated in New York, with its chief executive office also in Minnesota. The companies both operate out of New Ulm, Minnesota, and share the same president, Jose Gonzalez. As it appears in the articles of incorporation, Zappia's name is "Zappia Transportation, d/b/a Dittrich of Minnesota, Inc." Dittrich and Zappia are sister corporations operating under the parent umbrella of the "Detroit companies,"[2] and were determined by the IRS to be alter egos of one another, as well as alter egos of the Detroit companies.

On November 26, 1991, Allstate entered into factoring and security agreements with Dittrich and Zappia, as well as with the Detroit companies, whereby Allstate would advance funds to them in exchange for security interests in all their personal property, which included all accounts receivable. Dittrich and Zappia also executed guarantee agreements, pursuant to which they became liable for the other's debts and obligations to Allstate. Allstate filed financing statements in Minnesota, New York, Illinois, and Pennsylvania covering Dittrich's accounts receivable. Allstate filed financing statements securing Zappia's accounts receivable only in New York and Pennsylvania. Between November 1991 and February 1992, Allstate advanced a total of $3,794,627.32 to Dittrich and Zappia, $1,410,996.76 of which is still owing to Allstate.

---

[2]The "Detroit companies" consisted of Ivory, Marck Express, RW Services, Transportation Accounting Services and WT Cartage. Collateral owned by these companies is not at issue in this case.

Both Dittrich and Zappia had contracts to transport mail for the United States Postal Service (USPS). In addition to granting Allstate blanket security interests, Zappia and Dittrich executed agreements under which they specifically assigned their interest in the USPS accounts to Allstate and authorized payment to be made directly to Allstate. At the time of the levy, the USPS owed the companies more than $1 million.

In January 1992, the IRS determined that Dittrich had a tax liability of approximately $1,065,160. IRS Revenue Officer Laura Banks contacted Allstate sometime that month and spoke with Bret Kelly, Allstate's chief operating officer and senior vice president. Through her conversations with Kelly, Banks learned of Allstate's factoring and security agreements with Dittrich and Zappia.

On February 5 and 6, 1992, the IRS served levies on the USPS, seeking to satisfy part of Dittrich's tax liability with the monies owing from the USPS to Dittrich and Zappia. On February 10, 1992, the IRS served Dittrich and Zappia with notices of levy and filed a notice of federal tax lien. Additional levies on the companies' other commercial account debtors were served on February 13 and 14, 1992.

Allstate requested that the IRS refund the levied-upon accounts receivable. The IRS released the levies on the other commercial account debtors, but refused to release the USPS accounts and proceeded to seize the USPS accounts receivable. Of the $1,026,025.80 seized, $822,037.48 was attributable to contracts with Dittrich and $203,988.32 to contracts with Zappia.

Allstate filed an administrative claim, alleging that the IRS had wrongfully levied on USPS accounts receivable and requesting

that the IRS lift the levy and pay Allstate the monies seized.  The IRS determined that Allstate was not entitled to the funds and denied the requested relief.

Allstate filed suit for wrongful levy in federal district court.  The district court concluded that Allstate had perfected its security interest with Zappia by virtue of Minn. Stat. § 336.9-401(2), which provides that a filing made in good faith but in an improper place is nevertheless effective to perfect the security interest against any persons with knowledge of the contents of the financing statement.  Accordingly, the district court held that Allstate's security interest had priority over the tax lien and entered judgment for Allstate, ordering the IRS to pay Allstate $1,026,025.80, plus interest.

On appeal, the IRS argues that the district court erred in  relying on state law to determine the priority of the relevant interests and in ignoring relevant federal law.  The IRS also contends that the district court erred in finding that section 336.9-401(2) could redeem Allstate's improper filing.

Allstate contends that Zappia had no property interest in the accounts receivable to which the tax lien could attach; that the district court correctly applied the law in finding that Allstate's security interest was perfected; and that the financing statement filed in Minnesota under the name "Dittrich of Minnesota" operated to perfect Allstate's security interest in the collateral of both Dittrich and Zappia.  Passing over the first two of these contentions, we affirm the district court on the basis of the third.  See Dicken v. Ashcroft, 972 F.2d 231, 233 (8th Cir. 1992) (court of appeals may affirm district court on any basis supported by the record).

**II.**

In determining the priority of the tax lien as against Allstate's interest, we must apply federal law. See <u>United States v. Trigg</u>, 465 F.2d 1264, 1269 (8th Cir. 1972); <u>Aquilino v. United States</u>, 363 U.S. 509, 513-14 (1960). The applicable federal law for determining priority of a tax lien appears at 26 U.S.C. § 6323(a). Under that statute, a federal tax lien is not valid against a holder of a security interest. A "security interest" for purposes of section 6323(a) exists if "the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1).

The applicable local law in this case is that of Minnesota. In order to perfect a security interest under Minnesota law, a creditor must file a financing statement in the appropriate place, and the financing statement itself must comply with Minn. Stat. Ann. § 336.9-402, which requires that the financing statement list the names and addresses of the debtor and the secured party and that it describe the collateral. A financing statement which substantially complies with that section is effective despite minor errors, so long as they are not seriously misleading. Minn. Stat. Ann. § 336.9-402(8).

It is clear, and the IRS does not dispute, that Allstate's security interest in Dittrich's accounts receivable was protected under local law, as it was properly perfected. Because of the unique relationship between the companies, we conclude that this financing statement was also sufficient to perfect Allstate's security interest in Zappia's accounts receivable without any additional filing as to Zappia.

-5-

"To be effective, a financing statement 'must reasonably notify a creditor of prior interest in [a debtor's property].'" In re Knudson 929 F.2d 1280, 1284 (8th Cir. 1991) (quoting In re Alexander, 39 B.R. 110, 111 (Bankr. D.N.D. 1984)). "'[T]he bottom line [to test sufficiency] is whether a third-party searcher would be reasonably likely to find the financing statement.'" Knudson, 929 F.2d at 1284 (citation omitted).

In Knudson the debtors, Duane and Goldine Knudson, filed for bankruptcy as individuals, d/b/a Goldie's Furniture, Inc. A bank claiming a priority interest over the trustee in bankruptcy had previously filed a financing statement against the debtors under the name "Goldie's Furniture," despite the fact that the bank considered itself to be doing business with the Knudsons as individuals. We held that a searching creditor would not have found the financing statement unless the creditor knew that the Knudsons did business under the name "Goldie's Furniture." We concluded that not all creditors of the Knudsons would have that knowledge and found the financing statement to be insufficient to perfect the bank's security interest.

We conclude that the facts of this case mandate a result different from that reached in Knudson. First, unlike the situation in Knudson, where creditors may have been unaware of the corporate status of the party with whom they were dealing, the IRS knew it was dealing with Zappia as part of Dittrich. The evidence shows that Zappia's legal name also included the name "Dittrich of Minnesota," and it is probable that Zappia's creditors were aware of that fact. Moreover, Allstate's filing under "Dittrich of Minnesota" constituted more than a mere filing under a trade name. Rather, it was a filing under the name of the company that for all practical purposes was the same entity as Zappia.

We think this case is more akin to the situation in <u>Avco Delta Corp.</u> <u>Canada, Ltd. v. United States</u>, 459 F.2d 436, 442 (7th Cir. 1972). In <u>Avco</u> there was one parent corporation with two subsidiaries. A financing statement was filed under the name of only one of the subsidiaries. The court found this filing sufficient to perfect the security interest in the collateral of both the parent and the other subsidiary corporation because the filing under the name of one subsidiary was not seriously misleading to a searching creditor of the other subsidiary.

The <u>Avco</u> court based its determination in part on the similarity of the names of the corporations, but the controlling factor was whether the creditor would have been misled by the filing. Minn. Stat. Ann. § 336.9-402(8). The Ninth Circuit in <u>Siljeg v. National Bank of Commerce of</u> <u>Seattle</u>, 509 F.2d 1009, 1012 (9th Cir. 1975), held that "filing under an assumed trade name is effective unless it is misleading." The relevant question is not whether "Dittrich of Minnesota" was the true name of the company, but whether creditors would have been seriously misled by the filing under the name "Dittrich of Minnesota." <u>See</u> <u>id.</u> at 1013. Therefore, the pertinent inquiry is whether "information [was] available in the relevant business community which put creditors on notice that they should have searched financing statements under the name ['Dittrich of Minnesota']." <u>Id.</u> Here, the evidence supports a finding that creditors were put on notice that they should search under both "Dittrich" and "Zappia" and that the filing under "Dittrich of Minnesota" was thus not seriously misleading.

The companies' president testified that Zappia was part of Dittrich, as Dittrich had purchased Zappia and Zappia was not thereafter separately incorporated. The IRS admitted that Zappia and Dittrich were being run as one company and had the same

-7-

president.  The IRS considered the two companies to be the alter egos of each other and is now pursuing funds belonging to Zappia to satisfy Dittrich's tax liability. The notice of tax lien listed "Dittrich of Minnesota/Zappia Transportation, a corporation" as the debtor.  The IRS also referred to the companies as "brother/sister companies under the same parent umbrella."  In addition, there is evidence that Zappia was doing business solely as Dittrich of Minnesota, and, as indicated above, Zappia's articles of incorporation show Zappia's legal name as "Zappia Transportation, d/b/a Dittrich of Minnesota."

Moreover, assets, as well as liabilities, were shared by the companies.  IRS agent Laura Banks testified that there was "extreme commingling" of Dittrich's, Zappia's, and the Detroit companies' assets.  Banks also stated that "all of the daily business was commingled between the companies."  When Allstate collected money that was owed to one of the companies and which was in excess of that presently owed, Allstate would use that excess to offset a shortage of funds owing from the other company. In addition, monies that were paid to Zappia were wired to Dittrich's account.

Given the relationship between the companies, the manner in which the companies conducted business, and the fact that Zappia's legal name included the name under which the financing statement was filed, it is reasonable to assume that Zappia's creditors would know that Zappia was doing business as Dittrich.  A prudent creditor, therefore, would search under both "Dittrich" and "Zappia." Creditors would be "reasonably likely to find the financing statement," Knudson, 929 F.2d at 1284, and would not be seriously misled by the filing under "Dittrich."  See Minn. Stat. Ann. § 336.9-401(8); Avco, 459 F.2d at 442; Siljeg, 509 F.2d at 1012.

The purpose of filing financing statements is to put creditors on notice of existing interests in the debtor's property. In this case, in addition to having actual knowledge of Allstate's security interest in Zappia's accounts receivable, the IRS had, at the least, enough information before it to conclude that the financing statement filed under "Dittrich of Minnesota" could encompass Zappia's accounts receivable.

We conclude that Allstate was the holder of a security interest within the meaning of 26 U.S.C. § 6323(h)(1) and therefore has priority over the federal tax lien.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.