File Name: 12a0999n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 11-3549**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ABERCROMBIE & FITCH STORES INC.,          )
                                          )
      Plaintiff,                 )
                                          )
v.                                        )
                                          )
AMERICAN COMMERCIAL CONSTRUCTION,         )
INC.                                      )
                                          )
                                          )  ON APPEAL FROM THE UNITED
      Defendant,                 )  STATES DISTRICT COURT FOR THE
                                          )  SOUTHERN DISTRICT OF OHIO
and                                       )
                                          )
TIMOTHY CUPPS,                            )
                                          )
      Defendant-Appellant,       )
                                          )
UNITED STATES INTERNAL REVENUE            )
SERVICE,                                  )
                                          )
      Defendant-Appellee.        )

**FILED**
*Sep 10, 2012*
DEBORAH S. HUNT, Clerk

Before:  GIBBONS, ROGERS, and COOK, Circuit Judges

COOK, Circuit Judge.  This interpleader action concerns the proper distribution of approximately $200,000 (the "funds") that Plaintiff Abercrombie & Fitch Stores, Inc., owes for work completed by Defendant American Commercial Construction, Inc. (ACC).  Two competing lienholders remain on appeal: Timothy Cupps and the IRS.  Cupps appeals the district court's denial

- 1 -

of his motion for summary judgment, which ultimately resulted in the district court's award of the funds to the IRS. We affirm on different grounds.

I.

The parties do not dispute the relevant facts concerning the filing of two liens. The first lien resulted from a May 2008 California state-court judgment ordering ACC and its shareholder Paul Mendelson to pay damages to Cupps. The judgment included three decisions relevant to this appeal: (1) Mendelson is the alter ego of ACC; (2) ACC and Mendelson are jointly liable to Cupps for $22,361.36; and (3) Mendelson is individually liable to Cupps for $155,000. (R. 40-4, Am. J. at 4–5.) In light of the separate judgments against Mendelson and ACC, the state court characterized the alter ego finding as "academic." (*Id.* at 4 ¶ 6.) Cupps filed a Notice of Judgment Lien ("May 2008 lien") with the California Secretary of State ("Secretary") listing himself as the judgment creditor, Mendelson as the judgment debtor, and $184,751.41 as the property subject to the judgment lien.

The May 2008 lien contained an error. On the attached Judgment Lien Addendum, Cupps mistakenly listed ACC in box 5 as the "Name of Judgment Debtor"—where he should have listed the same debtor as box 1, i.e., Mendelson—but failed to identify ACC as an "Additional Judgment Debtor" in box 6.[1] (R. 40-5 at 2; *cf.* R. 43-2, JL Addendum Instructions at 2 (informing filer to list

---

[1]Under "Organization's Name" in subpart 5a of box 5, Cupps responded, "American Commercial Construction, Inc. (as to $22,293.08 of the above-referenced judgment)."

original debtor in box 5 and additional judgment debtors in boxes 6, 7, and 8).) As a result, California recorded the May 2008 lien against only Mendelson, and not ACC. On June 2, 2008, the Secretary sent a letter confirming the recording of a judgment lien against Mendelson and instructing Cupps's attorney to "review the information for accuracy," noting that "[e]nsuring that accurate information is on the document to be filed is the responsibility of the filing party." (R. 40-5 at 3.) Despite this warning, it appears that Cupps did not amend the judgment lien.[2] Cupps admits that he completed the wrong box on the Judgment Lien Addendum and that "the $22K lien against ACC was not indexed." (Appellant Br. at 5.)

The second lien arose from ACC's tax liabilities, when the IRS recorded an $800,000 tax lien against ACC—coincidentally, on the same June 2008 date that California sent the confirmation letter on the Cupps lien. The IRS recorded the lien by filing a Notice of Federal Tax Lien ("June 2008 tax lien") with the Secretary.

Though Cupps contests neither the validity of the IRS lien nor the invalidity of his attempt to file a lien against ACC, he nevertheless claims a superior lien against ACC by virtue of his May 2008 lien against Mendelson. Specifically, Cupps argues that the California judgment's alter ego determination rendered ACC's property subject to the May 2008 lien against Mendelson. The IRS

---

[2]After the filing of the IRS lien, Cupps filed a different lien against ACC in October 2008. He does not claim that this lien sought to correct the error in the May 2008 lien.

does not dispute the California court's alter ego judgment but opposes Cupps's alter ego theory for claiming a perfected lien against ACC.

After Abercrombie & Fitch filed this interpleader action and deposited the funds with the court registry, Cupps moved for summary judgment, claiming that the priority of his May 2008 lien entitled him to $22,361.36 of the funds plus interest. He later filed a supplemental brief that concluded with a prayer that the court award the entirety of the funds. The district court denied summary judgment, finding that Cupps's May 2008 lien failed to satisfy federal and state perfection requirements as to ACC that would have afforded Cupps's May 2008 lien against Mendelson priority over the IRS's June 2008 lien against ACC.

In reaching this conclusion, the district court explained that the federal "first-in-time" rule determines priority in lien disputes involving federal tax liens; that tax liens become enforceable upon the filing of a Notice of Federal Tax Lien, 26 U.S.C. § 6323(a); and that competing state-created liens must satisfy both state attachment and federal choateness standards, *see Redondo Constr. Corp. v. United States*, 157 F.3d 1060, 1062–63 (6th Cir. 1998). Addressing California's perfection standard, the court stated that minor errors in a UCC financing statement render the filing defective if they make the filing "seriously misleading." *See* Cal. Com. Code § 9506(a); *Corona Fruits & Veggies, Inc. v. Frozsun Foods, Inc.*, 48 Cal. Rptr. 3d 868, 870 (Cal. Ct. App. 2006). Noting Cupps's failure to identify ACC as a judgment debtor, the court deemed the May 2008 lien "seriously misleading" as to ACC, because an interested third party performing a lien search in

No. 11-3549
*Abercrombie & Fitch Stores, Inc. v. Am. Commercial Constr., Inc.*

California would not know of the existence of the lien. This flaw in the May 2008 lien, the court held, neutralized Cupps's alter ego argument.

After further motion practice resolved the IRS's priority as to other claimants, the district court granted final judgment and disbursed all of the funds to the IRS. Cupps timely appeals, challenging the district court's grant of priority to the later-filed IRS tax lien.

II.

The interpleader plaintiff brought this matter under the district court's federal question and diversity jurisdiction, 28 U.S.C. §§ 1331 and 1332(a), and we now review that court's final judgment, 28 U.S.C. § 1291. We consider the grant of summary judgment afresh, asking whether the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). This court may affirm on any basis supported by the record. *See, e.g.*, *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011).

III.

Federal law determines lien-priority disputes involving federal tax liens. *United States v. Equitable Life Assurance Soc'y of the U.S.*, 384 U.S. 323, 330 (1966); *Aquilino v. United States*, 363 U.S. 509, 513–14 (1960) (collecting cases). The tax code recognizes that certain state-law

- 5 -

claims, including those of "judgment lien creditor[s]," have priority over federal tax liens. *See* 26 U.S.C. § 6323(a) (providing that federal tax liens "shall not be valid as against any . . . judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."). Though federal law generally follows the common-law "first in time" rule, the tax code imposes different perfection standards for federal tax liens and competing state judgment liens. *See United States ex rel. IRS v. McDermott*, 507 U.S. 447, 449 (1993). Whereas a federal tax lien generally becomes enforceable upon the filing of a Notice of Federal Tax Lien with the relevant state authority, *see McDermott*, 507 U.S. at 453 (applying 26 U.S.C. § 6323(a)), competing state judgment liens must satisfy the "federal standard of 'choateness'" prior to the filing of the federal lien to receive priority, *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000) (quoting *Equitable Life Assurance Soc'y of the U.S.*, 384 U.S. at 328).

Traditionally, a lien became choate under federal law "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established," such that "there is nothing more to be done." *United States v. City of New Britain*, 347 U.S. 81, 84 (1954); *Blachy*, 221 F.3d at 905. The Department of the Treasury codified this standard in a federal regulation defining the term "judgment lien creditor" that appears in 26 U.S.C. § 6323(a). *See* 26 C.F.R. § 301.6323(h)-1(g). According to that provision,

> The term "judgment lien creditor" means a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a

> person who has perfected a lien under the judgment on the property involved. A judgment lien is not perfected *until the identity of the lienor, the property subject to the lien, and the amount of the lien are established*.

*Id.* (emphasis added). Reading these provisions together, our circuit in *Redondo Construction Corp. v. United States* deduced two requirements for state-created liens to achieve priority under the federal first-in-time rule: (1) attachment, and (2) choateness. 157 F.3d 1060, 1062 (6th Cir. 1998). The *Redondo* court looked to state law in determining whether a creditor's judgment attached to property. *Id.* at 1063 & n.4 (explaining that, before the court could consider choateness, the "judgment creditor must first do that which is required under state law to cause a judgment to attach to property").

Following *Redondo*, the district court turned to California law and invalidated the May 2008 lien as to ACC under the "seriously misleading" doctrine applicable to financing statements under the UCC. Cupps challenges the district court's reliance on that doctrine, as well as its rejection of his alter ego theory.

*A. The "Seriously Misleading" Doctrine & California's Requirements for Judgment Liens*

The "seriously misleading" standard derives from California Commercial Code § 9506(a), which gives effect to "substantially" compliant financing statements, "unless the errors or omissions make the financing statement seriously misleading." Cal. Com. Code § 9506(a); *see also Corona Fruits*, 48 Cal. Rptr. 3d at 870. Cupps does not deny that he loses if the UCC's "seriously misleading" doctrine applies to his judgment lien. *See* Cal. Com. Code § 9506(b) (explaining that

a financing statement "is seriously misleading" if it "fails sufficiently to provide the name of the debtor"). Rather, he challenges the application of that standard in the first place.

In arguing for application of the UCC's "seriously misleading" standard, the IRS points to a provision of the California Civil Procedure Code: section 697.570. That statute provides that, "[u]pon presentation of a notice of judgment lien on personal property for filing and tender of the filing fee to the office of the Secretary of State, the notice of judgment lien shall be filed, marked, and indexed *in the same manner as a financing statement*." Cal. Civ. Proc. Code § 697.570 (emphasis added). According to the IRS, "same manner as a financing statement" means that the UCC's "seriously misleading" standard applies and invalidates the May 2008 lien for failing to identify ACC as a judgment debtor. This argument persuaded the district court.

While intuitive, we cannot accept this broad reading of § 697.570. Looking to the provision's plain language, we note that rather than prescribing form requirements for judgment liens, the "same manner as a financing statement" instruction applies to the Secretary's *filing*, *marking*, and *indexing* of judgment liens. We deem it unlikely that California courts will read this language to encompass the "seriously misleading" standard.

Other statutory provisions detail California's formal requirements for a judgment lien, but do not invoke the UCC "seriously misleading" doctrine. For instance, Civil Procedure Code § 697.510(a) states that a judgment lien "is created by filing a notice of judgment lien in the office of the Secretary of State pursuant to this article." Elsewhere, the Code stipulates that the notice must

identify the judgment creditor; judgment debtor; the scope of the lien; the court, case number, and date of the relevant judgment; and the amount required to satisfy the judgment. Cal. Civ. Proc. Code § 697.550(a)–(f). None of these provisions addresses the effect of errors in the notice—the problem the "seriously misleading" doctrine resolves for UCC financing statements. Yet, § 697.510, which details the "[c]reation and duration" of judgment liens, expressly incorporates *other* UCC provisions for the administration of judgment liens. *Id.* § 697.510(k)–(m) (adopting California's UCC provisions for filing fees, indexing, and certain definitions). The express adoption of these UCC provisions—but not the "seriously misleading" standard employed by § 9506—counsels against applying that standard to judgment liens. *See, e.g.*, *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 553 (6th Cir. 2012) (applying interpretive canon *expressio unius est exclusio alterius* to give statute its plain meaning).

Though Cupps has the better of the UCC argument, California law still requires a notice of judgment lien to identify the judgment debtor. Cal. Civ. Proc. Code § 697.550(b) (requiring "[t]he name and last known mailing address of the judgment debtor"). Toward this end, California's standard lien forms allow for judgment creditors to name additional judgment debtors and provide instructions. Cupps's May 2008 judgment lien botched this requirement, as he admits failing to include ACC as a judgment debtor. California viewed the May 2008 lien deficient in this manner, because its lien confirmation to Cupps acknowledged the existence of a judgment lien against Mendelson, but not ACC. Further, the confirmation instructed Cupps to correct any errors or omissions with the filed lien, yet he neglected to do so. Cupps concedes "that [his] judgment lien

filing against ACC is unperfected." (Appellant Reply Br. at 14.)  Faced with this flaw, Cupps turns to alter ego theory to establish both the attachment of ACC's property and a choate lien.

### B.  Cupps's Alter Ego Theory

Cupps primarily argues that his May 2008 judgment lien against Mendelson established a lien against ACC, despite the error in the filed lien notice, because a California court determined Mendelson to be ACC's alter ego prior to his filing of the lien. Because California law allows for the attachment of "all" of a judgment debtor's property, *see* Cal. Civ. Proc. Code § 697.530(a), he argues that the alter-ego judgment effectively converted ACC's property into Mendelson's property, such that his May 2008 judgment lien against Mendelson simultaneously attached ACC's property prior to the IRS's tax lien against ACC.

As of the filing of his appellate brief, Cupps admitted he had no authority for the application of alter ego theory to the circumstances of this case—a lien-priority dispute where the earlier lien against an alter ego fails to name the sham corporation as a judgment debtor, but nevertheless claims priority over its property.  Still, he contends that "the alter ego principle of attaching all property based on a lien filing exists in . . . federal cases, especially when the [IRS] needs the doctrine to avoid these types of naming/alter ego problems for itself." (Appellant Br. at 18–19.)  For support, he relies on *Horton Dairy, Inc. v. United States*, 986 F.2d 286 (8th Cir. 1993)—a case holding that the federal tax code permits the IRS to levy taxpayers' unpaid taxes against their alter ego corporation upon the filing of a tax lien against them.  986 F.2d at 290–91.  Cupps claims that the

similarity between California's attachment statute, Cal. Civ. Proc. Code § 697.530, and the federal provision construed in *Horton Dairy*, 26 U.S.C. § 6321, requires the same alter ego analysis employed by that court; otherwise, "it would appear to be inconsistent, and potentially a constitutional violation" to interpret the similar rules in a way that benefits the IRS but does not benefit Cupps. (Appellant Br. at 20.)

Neither *Horton Dairy* nor California's attachment provision, Cal. Civ. Proc. Code § 697.530(a), supports Cupps's conclusion.

*1.* Horton Dairy *Distinguishable*

Beginning with *Horton Dairy*, Cupps overlooks a key distinguishing fact: the putative competing lien-holder in that case (a bank) did not claim to have a perfected lien (a security interest) against the sham corporation (a dairy). 986 F.2d at 291 (concluding that the bank failed to allege facts demonstrating that it exercised its right to a setoff from the dairy's checking account). Put differently, while that court ruled on attachment—reading § 6321 of the tax code broadly to attach an alter ego's property for purposes of IRS levies, *see id.* at 290–91—it did not extend that rule to choateness or priority, *see id.* at 291 (affirming district court's priority determination in the absence of facts supporting the bank's right to setoff). The IRS therefore correctly distinguishes that case from the relief sought by Cupps in this case: "*Horton Dairy* did not . . . hold that a federal tax lien

filed against one party trumped a perfected security interest (or . . . any other kind of perfected lien) in the property of the party's alter ego." (Appellee Br. at 22–23.)[3]

*Horton Dairy* had no occasion to consider choateness and priority because the bank challenged the IRS's legal authority to issue levies on an alter ego's assets in the first place. *See Horton Dairy*, 986 F.2d at 290. Specifically, the bank objected to a sequence of events whereby the IRS issued a levy against the dairy *after* the filing of a tax lien against the taxpayers, but *before* filing additional tax liens naming the dairy as the taxpayers' alter ego—a sequence the bank characterized as a "'nonlien' situation." *Id.* at 288, 290. Though Cupps couches his argument as seeking application of the *Horton Dairy* / federal-tax code-attachment rule equally to the IRS and other lienholders, we distill his theory as one asking this court to extend this rule to choateness and priority analysis. Absent persuasive authority, we do not.

---

[3]Similarly, *Harris v. United States*, 764 F.2d 1126 (5th Cir. 1985), a case cited by Cupps in a footnote (Appellant Br. at 19 n.5), never held that a federal tax lien against a taxpayer gave the government a priority interest in an alter ego's property that trumped a perfected lien against the alter ego. It instead held that the IRS had a valid tax lien against the delinquent taxpayer, despite the fact that its notice named his sham corporation as the debtor, because the taxpayer as the sole shareholder must have had notice of the lien. *See id.* at 1129. Further, the court sustained the IRS levy on the taxpayer's homestead over the ex-wife's objection, ruling under Texas law that the divorce decree did not constitute the ex-wife's "purchase[]" of the homestead. *See id. Harris* thus offers no support for Cupps's alter ego argument.

### 2. *26 U.S.C. § 6321 & California's Attachment Statute*

Notwithstanding these distinctions, Cupps seizes on *Horton Dairy*'s broad interpretation of the following language of 26 U.S.C. § 6321:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

*Horton*, consistent with well-established federal precedent, interpreted "all property" to include the property of an alter ego, such that the IRS could levy on the alter ego's assets to collect unpaid taxes. *Horton Dairy*, 986 F.2d at 290–91 (collecting cases); *see also G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977) (construing 26 U.S.C. § 6321 to permit the IRS to levy upon an alter ego's assets). Because California law similarly subjects "all property of the judgment debtor . . . to enforcement of a money judgment," Cal. Civ. Proc. Code § 695.010(a), Cupps argues that the court should likewise interpret California law as attaching an alter ego's property. *See also id.* § 697.530(a)–(b) (defining a judgment lien as "a lien on all interests in [certain types of] personal property," and providing that the judgment lien attaches to future-acquired property "at the time it is acquired"). He further notes in his reply brief that certain California provisions attach property not held in the judgment debtor's name, including community property under the control of a spouse. *See* Cal. Civ. Proc. Code § 695.020.

Ultimately, however, Cupps lacks one thing crucial to *Horton Dairy*'s interpretation of 26 U.S.C. § 6321: case law supporting such a broad interpretation. Unlike the well-established body of federal case law giving broad construction to 26 U.S.C. § 6321, Cupps provides no authority supporting a similar broad interpretation of California's attachment laws, and we have found none.[4] And the California legislature's inclusion of marital community property does not necessarily help Cupps's argument, because it did not expressly provide for the attachment of alter ego property. The

---

[4]In his brief and a notice of supplemental authority filed less than a week before argument, Cupps cites two authorities that he claims support his alter ego theory under California law. The first, a Ninth Circuit case (relegated to a footnote in his brief, *see* Appellant Br. at 11 n.4), involved a complex lien dispute among judgment creditors, a judgment debtor and its alter ego, and the third-party recipient of fraudulently conveyed funds. *Fleet v. TML*, 65 F.3d 119, 120–21 (9th Cir. 1995). Cupps does not explain how that case provides guidance for the issues in this case. We find it inapposite because (1) both competing judgment creditors in that case *knew* of the alter ego entity and filed fraudulent conveyance actions against the alter ego and the loan recipient; and (2) the court assessed priority based on when the creditors established their fraudulent conveyance actions against the alter ego. *See Fleet*, 65 F.3d at 120–22. By comparison, the IRS in this case could not know of another lien against ACC, because California did not record Cupps's lien against ACC. Further, like *Horton Dairy* and *Harris*, *Fleet* does not hold that a lien against one party trumps a perfected lien against the alter ego.

The second case, an unpublished decision by a California appellate court, did involve the alter ego doctrine in a priority dispute, but the appellate court did not rule on priority because the parties did not appeal that aspect. *See Ceres Pipe & Metal, Inc. v. Am. Sec. Fin. Corp.*, No. F048893, 2007 Cal. App. Unpub. Lexis 883 (Cal. Ct. App. Feb. 1, 2007). *Ceres* further differs from this case in that the trial court held that the competing lien-holder, American Security Financial Corporation, had constructive notice of Ceres's claim to the fraudulently conveyed property of the lien debtor. *Id.* at *7. Specifically, the trial court received expert testimony stating that a prudent title insurance company would have treated Ceres's liens against the lien debtor as encumbrances on the disputed property. *Id.* at *20. By comparison, nothing in the record of this case suggests that the IRS had constructive notice of Cupps's lien against ACC, or that a reasonably prudent third-party in the IRS's shoes would have discovered the lien.

same *expressio unius* canon that benefits Cupps on the "seriously misleading" doctrine cuts against his alter ego argument here.

The mere fact that federal courts construe the tax code broadly as allowing the IRS to attach an alter ego's property does not mean that state courts will construe state laws to attach *and* perfect (for purposes of priority) a sham corporation's property whenever a lien arises against its alter ego. States intending that interested parties have notice of a judgment debtor's obligations may well require a judgment creditor to perfect a lien against a known alter ego judgment debtor, as opposed to burdening interested third-parties with the task of unearthing latent debts arising from liens against an alter ego. *See Cassel v. Kolb*, 84 Cal. Rptr. 2d 878, 882 (Cal. Ct. App. 1999) (acknowledging that "the purpose of [a UCC] financing statement was to give notice to other creditors or potential creditors that another may have a security interest in certain of the debtor's assets"); *Truestone, Inc. v. Simi W. Indus. Park II*, 209 Cal. Rptr. 757, 761 (Cal. Ct. App. 1984) (describing the purpose of the notice requirement appearing in California's mechanic's lien statute as "giv[ing] the owner advance information of the identities of any unpaid claimants who may perfect liens against his property if their debts remain unsatisfied").

We need not resolve this state-law dispute, however, because assuming that the May 2008 lien against Mendelson surreptitiously attached ACC's California property, the lien does not meet the federal choateness standard as to ACC.

### 3. Federal Choateness

To recap, federal choateness demands that a lien identify (1) the lienor; (2) the property subject to the lien; and (3) the amount of the lien. *See* 26 C.F.R. § 301.6323(h)-1(g); *United States v. Estate of Romani*, 523 U.S. 517, 523 (1998) (citing *City of New Britain*, 347 U.S. at 84). Cupps's defective lien failed to establish the second prong as against ACC.

Cupps argues that, under the alter ego lens, ACC's property *is* Mendelson's property. But the California court that made the alter ego finding did not think so. That court termed its alter ego finding "academic," because the jury awarded liability against both Mendelson and ACC. Indeed, the court imposed a separate, $155,000 judgment against Mendelson individually that comprised the majority of the approximately $180,000 judgment. Nevertheless, Cupps asks us to transfer that obligation to ACC and then give priority to a lien he admits he failed to perfect as to ACC. Cupps offers no authority for this relief, and we do not grant it.

Notably, this case does not concern a judgment debtor's fraudulent conveyance of assets to avoid liability under a judgment. As of the time he filed the May 2008 lien, Cupps knew of the alter ego relationship between Mendelson and ACC—the California trial court's amended judgment established that fact. Still, Cupps mistakenly failed to include ACC as an additional judgment debtor, and he made no attempt to correct his lien upon receiving the confirmation. As a result, California did not record a lien against ACC, and a reasonably prudent creditor (here, the IRS) would not know of ACC's liability to Cupps.

This lack of notice distinguishes this case from *Allstate Financial Corp. v. United States*, 109 F.3d 1331 (8th Cir. 1997), a case cited by the IRS but neglected by Cupps. There, the court granted priority to Allstate's security interest over IRS tax levies, despite the fact that Allstate's financing statement failed to identify the alter ego. *See* 109 F.3d at 1335. Yet, the *Allstate* court emphasized two facts not present here: (1) record evidence demonstrating that the IRS had actual knowledge of Allstate's security interest in the alter ego; and (2) the debtor's legal name included its alter ego's name as a "d/b/a," putting interested third parties on notice of its alter ego name. *Id.* at 1334–35 (noting that "[a] prudent creditor . . . would search under both [alter ego names]" and discover the latent security interest). *Id.*

Ironically, Cupps justifies his alter ego theory by dismissing the IRS's interest in lien-recording, asserting that "[t]he IRS would not have behaved differently or changed its course of action if it had been alerted to Cupps'[s] lien." (Appellant Br. at 18.) Naturally, the IRS disputes this claim,[5] and at least two courts of appeals have rejected it, acknowledging that

> one of the effects of the [Federal Tax Lien Act of 1966] was to finally rebut the frequent secured party argument . . . that a failure to file and hence perfect a security interest under the Uniform Commercial Code ought not to subordinate the security

---

[5]The IRS emphasizes that it *does* have an interest in knowing of taxpayers' lien liabilities, because they influence how it attempts to collect taxes (i.e., whether to levy on taxpayer income vs. enforcing a lien against other taxpayer assets). The IRS also rebuts Cupps's claim that it applies a double standard, noting that it routinely files special tax lien notices to alert taxpayers that it seeks an alter ego's assets to satisfy taxpayer debts. (Appellee Br. at 25 (citing IRS procedures governing the special-notice process, and collecting cases).)

> interest to the federal lien since the government does not in any event rely on the
> records in becoming a creditor.

*In re Haas*, 31 F.3d 1081, 1088 (11th Cir. 1994) (quoting *Dragstem v. Obermeyer*, 549 F.2d 20, 26

(7th Cir.1977)). We observe a more fundamental flaw inherent in this reliance argument: if

California law embodies this broad alter ego theory, it would apply to all priority disputes among lien

creditors, not just those involving the IRS.

Cupps's May 2008 lien notice failed to list ACC's property as subject to the lien, as required

for federal choateness. Any inequity flows from this oversight, not the existence of an alter ego.

The district court therefore correctly denied Cupps's claim to priority over the IRS's June 2008

tax lien.[6]

---

[6]We need not consider Cupps's undeveloped Equal Protection Clause claim, both because
he failed to present it to the district court and because he failed to include it in his statement of
appellate issues. *See Bondex*, 667 F.3d at 681 (deeming claim forfeited because the party failed to
raise it in the district court); *United States v. Cervantes-Coronado*, 443 F. App'x 960, 964 (6th Cir.
2011) (treating an unidentified issue as forfeited, because the party "obliquely object[ed]" to the
district court's ruling and "treat[ed] the issue in a cursory manner"). Such a claim would, however,
face an uphill battle in the absence of California authority supporting his alter ego theory of priority.
And even if California law recognizes his lien against ACC, Cupps does not suggest that the federal
tax provisions infringe on fundamental rights or use suspect classifications, so as to trigger
heightened scrutiny. Absent heightened scrutiny, the government surely has a rational basis for
prioritizing the collection of tax revenues. *See, e.g.*, *Knochelmann v. Comm'r*, 455 F. App'x 536,
540 (6th Cir. 2011) (collecting cases applying rational-basis review to tax policies, unless the tax
policy infringes on fundamental rights or uses "suspect classifications").

IV.

We AFFIRM.